403 F.2d 437
 KINNEAR-WEED CORPORATION, Petitioner-Appellant,
v.
HUMBLE OIL & REFINING COMPANY, a Texas Corporation (Now dissolved and merged into Standard Oil Company, a New Jersey Corporation) its successor and/or surviving corporations and its assigns, Respondent-Appellee.
 No. 16780.
 United States Court of Appeals Fifth Circuit.
 October 15, 1968.
 
 Fred Parks, Houston, Tex., W. E. Kinnear, Beaumont, Tex., for appellant.
 Garrett R. Tucker, Jr., C. O. Ryan, Houston, Tex., for appellee.
 Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, THORN-BERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER and MORGAN, Circuit Judges*.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 This is an extraordinary petition[1] in which Petitioner[2] seeks to set aside the judgment of the Trial Court entered in 1956, holding a patent invalid and not infringed. That judgment was affirmed by this Court in 1958, with subsequent modification in 1961.[3]
 
 
 2
 The attack on the judgment of[4] September 1956 is based upon the claim that the Trial Judge was disqualified by reason of business transactions and relations with the patent-suit defendant, Humble,[5] amounting to a "substantial interest" within the meaning of the disqualification statute[6] or other appropriate legal principles. Collateral to, but claimed to be independent of, the attack on the judgment, Petitioner also seeks various types of relief including damages, actual and punitive, attorney's fees, etc., from Humble, based upon fraud both on the District Court and on the Court of Appeals for the Fifth Circuit. Petitioner claims that the Trial Judge was disqualified because of substantial financial interest in the litigation arising from these four incidents, considered singly or in combination: [1] ownership by the Trial Judge of 100 shares of Humble stock, [2] the relationship between Humble and Coastal Tool Co., Inc., a service company in which the Trial Judge had a 25% stock ownership, served as director and secretary-treasurer, and from which he received both dividends and salary, [3] the settlement and disposition of the Beck suit brought against Humble (as the lessee) by owners of mineral interests, including the fractional share (1/320th) of the Trial Judge who was a named plaintiff, and [4] leases, options, and re-leases between Humble, on the one hand, and members of the family of the Trial Judge's wife in the Sabine Tram Lands.[7] Petitioner asserts that the uncontradicted facts as to [1], together with the uncontradicted facts as to any one or more or all of [2], [3], or [4], entitle it as a matter of law — at this time and at the hands of this Court — to the relief here sought without the necessity for any further factual inquiry by this Court, a panel thereof, a Special Master acting for it, or by a District Court for handling by it either as an original suit or as a reference to it from the Court of Appeals.
 
 
 3
 Following an earlier submission of this case to a panel of three Judges, which rendered no decision, this Court, on its own motion, set the matter down for reargument and determination by the Court en banc. We have had extensive briefs and extended oral argument before the Court en banc. Because our disposition of the case calls for factual inquiry and determination by the District Court of the almost limitless factual disputes which have so far never been judicially resolved, we think it unnecessary and inappropriate to discuss any of these things in detail lest what we say might lead the District Court to believe that we had formed, or intimate, judgments, either factual or legal, on them.
 
 
 4
 Several matters, however, are decisive and can be briefly stated at the very outset. The first is that, contrary to Petitioner's assertion, this record does not contain uncontradicted facts with respect to [2], [3], or [4], singly or in cumulation which require, or permit, this Court to determine now as a matter of law, fact, or both, that the Trial Judge was disqualified. Thus the relief sought (see note 4, supra) cannot be granted by us on this record at this time. Nor does the present record show facts requiring, or permitting, this Court at this time to declare that Humble was guilty of fraud on this Court, the District Court, or both. We expressly decline to grant this relief.
 
 
 5
 At the same time we decline to accept Humble's plea of res judicata, which is based primarily on the historical fact that in 1960-61 Petitioner filed in this Court motions which essentially sought to have the Trial Court's patent judgment set aside because of disqualification of the Trial Judge for reasons [1] and [2], to which Humble made responses. Each of these reasons was set forth in considerable factual detail in the moving papers.[8] Humble contends that when this Court denied that post-affirmance relief sought on the basis of disqualification of the Trial Judge for financial interest in the litigation, this action became insulated on familiar principles of res judicata, since neither the basis for this Court's action (untimeliness) nor the later addition of added factual details would be of any significance. But, as we several times make clear, this is a matter which transcends the interests of the parties. The purity of the judicial process and its institutions is the thing at stake. Whatever might be the usual consequences of res judicata, collateral estoppel or doctrines akin to them, we reject them here. They are not a bar or defense here or below.
 
 
 6
 We are equally clear that neither standing alone nor in combination with any one or more or all of [2], [3], or [4], item [1] the ownership of 100 shares of Humble stock is not, and was not, either as a matter of law or fact or both a disqualifying factor. The record shows without contradiction that the 100 shares owned by the Trial Judge[9] were an infinitesimal portion of 36 million shares outstanding when the case was tried. This stock had been owned for a long time prior to the time the Trial Judge took his oath (September 9, 1954). The Trial Judge informed his wife that the stock would have to be sold as he would be handling matters in which Humble was a litigant. The stock was sold on January 17, 1954, within a few months after his accession, during which interval he had handled some preliminary matters in the patent case.[10] Petitioner presses hard upon us the early decision of the Ninth Circuit in In re Honolulu Consolidated Oil Co., 9 Cir., 1917, 243 F. 348. We do not regard this case as controlling for a number of reasons. First, the disqualification was asserted well in advance of trial. Second, that case arose under the predecessor statute10-A which defined the prohibited relationship between the Judge and the litigation as one in which he was "in any way concerned in interest" rather than the present statute (see note 6, supra), which has the far different term "substantial interest." This tiny fractional interest in the equity ownership of this huge industrial enterprise does not amount, either as a matter of fact, or law, or both, to a substantial interest by the Trial Judge in the case or a prohibited connection with a litigant. The fact that the Trial Judge insisted that the stock be sold neither makes it substantial nor indicates a conscious awareness that he had a relationship to the litigant which was improper or disqualifying.
 
 
 7
 We think, however, that there should be a factual, judicial determination of the facts with respect to [2], [3], and [4]. We cannot emphasize too greatly, however, that since our approach in this case is one in which the interests of justice transcend those of the parties, this action of ours is not to be interpreted as a holding, either express or implied, that a "prima facie" case has been made out. Nor do we suggest even a remote possibility of a whisper of a suggestion as to how any one or more or all of these issues ought to, or must be decided. We are impelled by an abundance or perhaps an overabundance of judicial concern and public policy to order further hearings in this cause, but we disagree with our dissenting brethren only as a matter of degree.
 
 
 8
 Without even remotely suggesting what the facts or their significance may be, a brief mention of grounds [3] and [4] is illustrative. The Beck lawsuit in the State Court alleging nondevelopment of minerals, tried in the Spring of 1954, ended in a hung jury. In October of 1954 those actively in charge of the litigation for the mineral owners had worked out a settlement in which Humble was to pay $5,000 to defray the Plaintiffs' costs (and perhaps some of the attorney's fees incurred by them). The settlement was accepted December 21, 1954 with the money being paid on February 21, 1955. The share of the Trial Judge was $409.24. In the interim the Trial Judge on January 10, 1955, had denied Petitioner's first motion for a jury trial. There is an innuendo, but nothing more, that since historically production increased on this lease subsequent to that settlement, there must have been "something more" to the settlement.[11] Item [4] does not even enter the picture until after the Trial Judge had entered his findings of fact, conclusions of law and formal judgment.[12] The Sabine Tram Lands[13] is a large tract of some 80,000 acres purchased in 1937 by the Trial Judge's father-in-law and another wholly unconnected with the family. An undivided 1/12th interest was transferred to the Trial Judge's wife, and over a period of many years prior to the Trial Judge's going on the bench, there had been numerous leases, releases, bonuses, and options between the co-owners of the lands, on the one hand and a number of oil companies, including Humble as but one of many. Nothing indicates that either the Trial Judge or his wife had anything to do with negotiation of the leases or management of the property. One of these transactions was a lease granted in November 1956 from which the Trial Judge's wife received in December of 1956 a substantial sum as her portion of the lease bonus paid by Humble.[14] But this same record upon which Petitioner boldly demands immediate and decisive relief shows that the payments of all of these bonuses, delay rentals, etc. were proportional to all other co-owners. And from an entire want of any other showing these appear to be routine arm's length transactions in which Humble was but one of many oil companies. In fact, 25 leases were granted to other operators prior to the November 1956 lease to Humble.
 
 
 9
 The same sort of analysis can be made of many phases of [2] Coastal since this record fails to even touch upon, among many other facets perhaps of equal significance, whether Humble at the time it tried the patent case knew that the Trial Judge had been and still was an owner, officer and director of Coastal, or whether the Trial Judge had any actual knowledge, as distinguished from that which might be imputed to him from his director-officer-stockholder interests, that Coastal had significant dealings with Humble or that these were in any extent or nature less than routine, arm's length transactions in the normal course of business.
 
 
 10
 We therefore conclude that the interests of justice require that there be a judicial factual hearing and determination of the charges in and related to [2], [3], and [4] either singly or in combination. Obviously this Court is not equipped for this sort of determination, either acting en banc, by a panel, or by one Judge acting as an independent Special Master. This is the task for which a District Court is ideally suited. Consequently, we treat this extraordinary petition as one requesting leave[15] of this Court to proceed with a motion under F.R.Civ.P. 60(b) or, as permitted in Rule 60(b), an "independent action."[16] We think this proceeding should go forward without further delay since so much time has already elapsed subsequent to the date of the judgment and its earlier affirmance by us. The issues may encompass the charges showing fraud upon this Court. And to the extent that Petitioner undertakes to prove such facts as distinguished from fraud on the District Court, — especially with respect to the response made to the 1960-61 motions of Petitioner (see note 8, supra, and accompanying text) the District Court shall hear and determine and make findings of fact and conclusions of law on that feature of the case. After which, by appropriate steps, we can determine whether and to what extent these are to be treated as the action of (i) a District Court serving as a Special Master, requiring our approval prior to their effectiveness, or (ii) simply as a District Court in which event such findings and conclusions would be reviewed as a part of any appeal.
 
 
 11
 As substantially all of these same charges are made in litigation pending as original actions in the Southern District of Texas[17] we would leave to the District Court the question whether the proceedings authorized by this opinion may best go forward as a part of, or along with, those two cases or should be independently handled. Those cases, almost on the eve of trial set for February 1967, were apparenty voluntarily stayed by the Trial Court following Petitioner's formal motion to this Court to compel the District Court to stay further proceedings as well as similar motions filed in the District Court. Any such stays should be promptly vacated.
 
 
 12
 The Chief Judge of the United States District Court for the Southern District of Texas is directed to designate a United States District Judge to conduct the hearings and make the findings and conclusions herein ordered. This Court reserves jurisdiction to the extent as it may be necessary or appropriate for further and future orders by this Court.
 
 
 13
 We reiterate to the point of repetition that nothing we say or fail to say is to be taken as a possible suggestion of a whisper or remote intimation of how we feel any issue or issues should or must be decided or what kind or character of relief, if any, should follow in consequence thereof. All such matters are for the initial determination of the United States District Court for the Southern District of Texas in accordance with this opinion.[18]
 
 APPENDIX A ORDER ON EN BANC
 
 14
 On May 18, 1967 Kinnear-Weed Corporation, describing itself as Petitioner-Appellant filed what it described as "Petition of Petitioner-Appellant" the opening portions of which (on pages 1 and 2) stated:
 
 
 15
 "Petitioner-Appellant moves this Court to grant this Petition in all respects and to grant:
 
 
 16
 "Amendment and enlargement of `NOTIFICATION OF THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT AND THE HONORABLE JUDGES THEREOF THAT THE JUDGMENT OF THIS CASE IS ILLEGAL AND THAT A CONTEST STILL REMAINS' filed by Appellant's assignee and ordered filed herein on January 13, 1960, so that the same be considered a petition for hearing and determination by this honorable Court of fraud practiced upon it in Appeal No. 16,780; to vacate its judgment in Appeal No. 16,780 and order the court below to set aside its judgment in Civil Action No. 2363; to order a new trial of the issues raised in Civil Action No. 2363; and to take such additional action as may be appropriate;
 
 
 17
 or in the alternative grant
 
 
 18
 "Petition for hearing and determination by this honorable Court of fraud practiced upon it in Appeal No. 16,780; to vacate its judgment in Appeal No. 16,780 and order the court below to set aside its judgment in Civil Action No. 2363; to order a new trial of the issues raised in Civil Action No. 2363, and to take such additional action as may be appropriate;
 
 
 19
 or in the further alternative
 
 
 20
 "By this Court's own order investigate, hear and determine all aspects of fraud and/or conspiracy practiced upon it by Respondent-Appellee as set out herein and all other fraud and/or conspiracy it might uncover through a full investigation and hearing."
 
 
 21
 At the end of a 45 page brief in support thereof it concluded (pages 46-47) with the following prayer:
 
 
 22
 "WHEREFORE, YOUR PETITIONER PRAYS AS FOLLOWS:
 
 
 23
 "1. That this Court order a full oral hearing of the matters raised herein and use its power to bring before it all those involved or effected [sic.] so that all of the facts can be known to it;
 
 
 24
 "2. That this Court enter a finding that the proceedings to date have resulted in a manifest injustice to the petitioner and a fraud upon the petitioner and all Federal Courts involved;
 
 
 25
 "3. That this Court vacate all of its judgments heretofore entered in Appeal No. 16,780;
 
 
 26
 "4. That this Court order the [Trial Court], to set aside and vacate the judgment in Civil Action No. 2363;
 
 
 27
 "5. That this Court order the [Trial Court], to hold a new trial in Civil Action No. 2363;
 
 
 28
 "6. That this Court find, determine and assess both compensatory and punitive damages in favor of the petitioner against the respondent;
 
 
 29
 "7. That this Court award to petitioner against respondent reasonable attorneys fees, together with costs and expenses, incurred by petitioner in the trial of Civil Action No. 2363 and all proceedings thereafter brought as a result of the entry of judgment in said Civil Action;
 
 
 30
 "8. That this Court hold a full hearing `En Banc' at Houston, Texas, for the convenience of the Court, Petitioner, Respondent and any witnesses and matters it might wish to hear;
 
 
 31
 "9. That this Court take such additional action as may be appropriate."
 
 
 
 Notes:
 
 
 *
 Judges BELL and SIMPSON, though active members of this Court, recused themselves and did not participate in the hearing or determination of this cause, nor did Judge Clayton because of intervening illness. Senior Judges Rives, Tuttle and Jones, each of whom had some contact with the case in its earlier or present posture likewise recused themselves which made it unnecessary for the Court to determine the question raised by it sua sponte as to the competency of Judges Rives and Jones to sit. See Allen v. Johnson, 5 Cir., 1968, 391 F.2d 527 (en banc)
 
 
 [1]
 In the unpublished order putting the case en banc we simply quoted from the petition and its prayer. We declined there, and now, to characterize it further. That portion of the order is reproduced as Appendix A to this opinion
 
 
 [2]
 Kinnear-Weed Corp
 
 
 [3]
 Kinnear-Weed Corp. v. Humble Oil & Ref. Co., E.D.Tex., September 28, 1956, 150 F.Supp. 143, aff'd, 5 Cir., September 22, 1958, 259 F.2d 398, cert. denied, 1959, 361 U.S. 903, 80 S.Ct. 210, 4 L.Ed. 2d 158, modified, 5 Cir., May 17, 1961, 296 F.2d 215, cert. denied, 1961, 368 U.S. 890, 82 S.Ct. 142, 7 L.Ed.2d 89
 
 
 [4]
 We phrase this broadly to include all gradations in the relief sought. (See Appendix A). These include requests that we render judgment at this time, on the former trial record, declaring the patent to be valid and infringed, or that we order a new trial of the merits of the patent litigation, or that we grant any of a whole host of variables in between
 
 
 [5]
 Humble Oil & Refining Co
 
 
 [6]
 The statute provides:
 Interest of justice or judge
 "Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein." June 25, 1948 c. 646, 62 Stat. 908, 28 U.S.C.A. § 455.
 
 
 [7]
 Prior to the argument of these cases en banc the members of this Court revealed to counsel for the parties their (a) ownership of stock in the Humble Oil — Standard of New Jersey Complex; (b) ownership of stock in other major Oil — Standard of New Jersey Complex, litigation now pending by Kinnear-Weed, and (c) ownership of oil and gas leases, royalty interests, or similar mineral interests under contracts or conveyances to which oil companies in (a) or (b) are parties. All counsel thereafter expressly waived any objections they might have had to the qualification of the Judges constituting this Court
 
 
 [8]
 The papers filed Dec. 27, 1960 were characterized by Petitioner as a "Motion To Open Case, Reverse, Vacate and Set Aside Judgments, Recall Mandate, Grant New Trial, Order Damages, Costs, Expenses, Attorney's Fees and other Relief for Appellant and against Appellee on Grounds of Fraud, the Disqualification of the District Judge and Unclean Hands of Appellee, Misrepresentation, Misconduct, Etc." This had been preceded by like motions in the Supreme Court
 On March 4, 1961 Petitioner filed another motion in this Court styled: "Motion on Newly Discovered Fraud, Misrepresentation and Misconduct Practiced upon Appellant and upon the United States Court of Appeals for the Fifth Circuit by Appellee, Its Executives, Agents and Attorneys and/or [the Trial Judge's Wife]."
 Petitioner's present charge against Humble for fraud practiced by Humble on the Court of Appeals is based primarily on what it claims were obvious deficiencies in the response made by Humble to these motions.
 
 
 [9]
 We believe the facts require holding that the stock belonged to the Judge's wife, but we regard this as immaterial and treat it as though he had either sole or community ownership of it
 
 
 [10]
 This is a graphic chronology of actions taken. September 9, 1954 — Trial Judge took oath
 October 4, 1954 — First pretrial conference in CA 2363.
 October 6, 1954 — Order granting in part and denying in part Defendant's motion for proper answers to interrogatories.
 November 12, 1954 — Second pretrial conference.
 November 12, 1954 — Order overruling in part and sustaining in part Defendant's objections to interrogatories.
 December 8, 1954 — Plaintiff's first motion requesting jury trial filed.
 December 20, 1954 — Order granting Defendant's motion for discovery.
 January 8, 1955 — Plaintiff's motion for default judgment filed.
 January 10, 1955 — Order denying Plaintiff's first request for jury trial.
 January 14, 1955 — Plaintiff's second jury demand filed.
 January 17, 1955 — Order denying Plaintiff's second request for jury trial.
 January 17, 1955 — Stock sold.
 10-A. Judicial Code (Act of March 3, 1911, C.231) § 20, 36 Stat. 1090. (Emphasis added.)
 "Whenever it appears that the judge of any District Court is in any way concerned in interest in any suit pending therein, or has been of counsel or is a material witness for either party, or is so related to or connected with either party as to render it improper, in his opinion, for him to sit on the trial, it shall be his duty, on application by either party, to cause the fact to be entered on the records of the court; and also an order that an authenticated copy thereof shall be forthwith certified to the senior Circuit Judge for said circuit then present in the circuit; and thereupon such proceedings shall be had as are provided in section fourteen."
 
 
 [11]
 This record is largely a battle of affidavits. Humble's response shows without factual contradiction of any kind that these increases in production were the result of formal orders of the Texas Railroad Commission under Texas proration statutes based upon specific geological or engineering factors
 
 
 [12]
 The case was tried in the Spring of 1955 and after extended proposed findings of fact, counter findings of fact, amended findings of fact, etc., the Trial Judge entered findings of fact and conclusions of law on September 28, 1956. Final judgment was entered October 10, 1956. The motion for new trial was filed October 19, 1956, and was formally denied on January 7, 1957
 
 
 [13]
 Petitioner insists because of commingling, these lands were, or became, the community property of the Trial Judge and his wife. Again we regard this as immaterial. (See note 9, supra)
 
 
 [14]
 This lease was executed two months after the Trial Judge entered his findings of fact and conclusions of law and two weeks after he had rendered final judgment, but five weeks before he overruled Petitioner's motion for new trial. (See note 12, supra)
 
 
 [15]
 See Bros, Inc., v. W. E. Grace Mfg. Co., 5 Cir., 1963, 320 F.2d 594, 607 n. 32; Butcher & Sherrerd v. Welsh, 3 Cir., 1953, 206 F.2d 259, cert. denied, 1954, 346 U.S. 925, 74 S.Ct. 312, 98 L.Ed. 418; Geuder, Paeschke & Frey Co. v. Clark, 7 Cir., 1961, 288 F.2d 1, cert. denied, 1961, 368 U.S. 826, 82 S.Ct. 47, 7 L.Ed.2d 30; Tribble v. Bruin, 4 Cir., 1960, 279 F.2d 424; Krock v. Electric Motor & Repair Co., 1 Cir., 1964, 339 F.2d 73, cert. denied, 1964, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298
 
 
 [16]
 Rule 60(b)
 "Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
 (1) * * * (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) * * * or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."
 
 
 [17]
 They are: Kinnear-Wood Corp. v. Humble Oil & Refining Co., No. CA63-H-509 and Kinnear-Weed Corp. v. Humble Oil & Refining Co., No. CA64-H-354
 
 
 [18]
 To enable the District Court to know what has been before this Court, as that might bear on the scope, nature, and extent of the remand proceedings for judicial factual resolution and legal determination, the parties, in collaboration with the Clerk of this Court, shall lodge with the District Court a complete copy of everything filed with, or presented to, this Court throughout the long history of this case. See Weymouth v. Colorado Interstate Gas Co., 5 Cir., 1966, 367 F.2d 84, 103 n. 67; Huber Corp. v. Denman, 5 Cir., 1966, 367 F.2d 104, 121 n. 64
 
 
 
 32
 DYER, Circuit Judge, with whom WISDOM, Circuit Judge, joins (dissenting):
 
 
 33
 Counsel for both the petitioner and the respondent unequivocally stated on oral argument of this case that they both desired to stand upon the record before us and that neither party had any further proof to offer. On this state of the record petitioner has utterly failed to prove that the Trial Judge was disqualified, or to prove that the respondent was guilty of any fraud on this Court or on the District Court. The petition should be dismissed. I respectfully dissent.