Dr. Milton MARGOLES, Plaintiff-Appellant,

v.

Alida JOHNS and The Journal Corporation, Defendants-Appellees.

No. 81–1345.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1981.

Decided Sept. 21, 1981.

Certiorari Denied Jan. 18, 1982. See 102 S.Ct. 1256.

Perry Margoles, Winthrop Harbor, Ill., for plaintiff-appellant.

James P. Brody, Foley & Lardner, Milwaukee, Wis., for defendants-appellees.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and LARSON,* Senior District Judge.

PER CURIAM.

The trial court denied the appellant's Fed.R.Civ.P. 60(b) motion, which sought to vacate a judgment of dismissal.[1] This appeal presents the question whether a trial court judge's considered refusal to recuse himself for alleged partiality, bias, or the appearance thereof, violates a party's right to due process of law and thereby renders any judgment of the trial court void.

---

* Earl R. Larson, Senior District Judge of the District of Minnesota, is sitting by designation.

1. The original judgment in this case was entered by Judge Robert W. Warren; in light of the nature of this 60(b) attack, the case was transferred to Judge Terence T. Evans for purposes of deciding this motion.

The facts in this matter are fully laid out in the trial court's thorough Decision and Order of February 25, 1981, which is appended below. That decision denied the motion on the ground that the appellant had failed to establish that he had been denied the fundamental fairness to which he is constitutionally entitled.

This action for slander originated in 1972, and was dismissed in 1976 for failure to comply with discovery orders. That judgment of dismissal has already withstood one previous motion to vacate under rule 60(b); an appeal and petition for rehearing to this court, 587 F.2d 885 (7th Cir. 1976); and petitions for certiorari, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 794 (1977), and rehearing, 431 U.S. 926, 97 S.Ct. 2202, 53 L.Ed.2d 241 (1977), in the United States Supreme Court. Although the plaintiff questioned Judge Warren's impartiality at his first appearance before him, that issue was not raised in any of those post-judgment or appeal proceedings. Although that failure creates substantial questions of waiver and res judicata, *see, e. g., Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938); *Kansas City Southern Railway v. Great Lakes Carbon,* 624 F.2d 822 (8th Cir. 1980) (en banc), *cert. denied,* 449 U.S. 955, 101 S.Ct. 363, 66 L.Ed.2d 220 the district court did not deem it necessary to reach those issues. We agree with the trial judge in that respect, and also agree that his Decision and Order of February 25, 1981, reached the proper result for the proper reasons. We therefore adopt that decision, which is attached as Appendix I, as the opinion of this court.

Affirmed.

## APPENDIX I

Civil Action No. 72–C–470

### DECISION and ORDER

TERENCE T. EVANS, District Judge.

The complaint in this slander action was originally filed on August 18, 1972. In the action the plaintiff, Dr. Milton Margoles, claimed that Alida Johns, a newspaper reporter for The Journal Company, slandered him during conversations with members of the staff of an Illinois Congressman in the late summer of 1970.

Originally, this case was assigned to Judge John W. Reynolds of this district. In June of 1974, Dr. Margoles moved that Judge Reynolds recuse himself from the case. The principal reason cited in support of the motion was that Dr. Margoles could not receive a fair trial before Judge Reynolds because the judge was the Attorney General of the State of Wisconsin during the early 1960's, a time when questions concerning Margoles' state medical license were under consideration by the Wisconsin Medical Examining Board. Subsequently, prior to a ruling on plaintiff's recusal motion, the case was transferred to Judge Robert W. Warren upon his appointment to this court in 1974. Judge Warren had served as Attorney General of Wisconsin from 1969 until his appointment to the federal bench.

The first appearance of the parties before Judge Warren occurred on April 25, 1975. At the appearance, Dr. Margoles' attorney asked whether Judge Warren's having been Attorney General would create any ·question of impartiality. Judge Warren said that he had not had such contact with any Margoles matters as would cause a problem. Dr. Margoles concedes in his brief that the question was raised and considered, stating:

> "[plaintiff's attorney] expressed to Judge Warren Dr. Margoles' concern about, and inquired of Judge Warren about his ability to be impartial to the Plaintiff because of his adversary position as Attorney General to Dr. Margoles. Judge Warren disclaimed any bias and did not disqualify himself." (Plaintiff's Brief, pp. 2–3).

Judge Warren was never asked to consider or resolve any substantive issue in the case. On October 23, 1975, three months prior to the then-scheduled trial date of January 12, 1976, the defendants moved

294

under Rule 37, Fed.R.Civ.P., for an order dismissing the complaint. That motion was based upon the failure of the plaintiff to comply with discovery orders previously entered by Judge Warren in January and April, 1975. On January 5, 1976, the date of the final pretrial conference, Judge Warren heard oral argument on the motion to dismiss, considered and rejected plaintiff's motion for an adjournment of the trial date, and dismissed the case stating:

"[The Court] has the power in the face of prejudicial and willful failure to produce to utilize some pretty strong sanctions. I feel in this instance that you do have what amounts of willful failure to produce. . . . I think on the other hand the failure to produce, that is the heart of the controversy this morning, is in fact attributable to plaintiff and not to counsel. . . . I think that the defendant has been prejudiced and I think even more than the defendant the Court has been prejudiced, . . . [I] am faced with the plaintiff's attorney standing up here and saying he was prejudiced by the failure of his own client to produce the documents.

\*   \*   \*   \*   \*   \*

"[T]he Court is persuaded that it is one of the unusual cases in which the Court should and does make a specific finding that the failure to produce herein is willful, that it is prejudicial, that the matter sought to be produced is highly relevant and material to the case . . . , and that the failure to produce that and comply with the procedural orders of the Court has been so prejudicial that the sanction called for . . . is appropriate, and the Court does herewith order that the case shall be dismissed. . . ." (Transcript of Proceedings—1/5/76, pp. 42–44).

Judgment of dismissal was entered on January 8, 1976.

Plaintiff moved under Rule 60(b) to vacate the judgment on February 4, 1976. Also on February 4, 1976, Dr. Margoles appealed the judgment of dismissal to the Seventh Circuit. Judge Warren's disclaimer of bias and his decision not to disqualify himself was not raised in the 1976 Rule 60(b) motion or as an issue before the Seventh Circuit.

On March 15, 1976, Judge Warren entered an order denying plaintiff's motion to vacate the judgment of dismissal, stating in part:

"The Court is of the opinion that, as evidenced in the rather lengthy order of dismissal, the facts of this case demonstrate failures to comply with clear and repeated discovery orders on the part of the plaintiff and/or his agents and/or attorneys, all to the substantial prejudice of the defendants and their counsel and the administration of this Court. It seems apparent that these failures were done either willfully or in conscious disregard of this Court's specific decrees; thus there was ample justification for entry of an order of dismissal pursuant to Rule 37(b)(2)(C)."

Dr. Margoles' appeal to the Seventh Circuit met with a similar lack of success. In a decision embracing both the dismissal order and the denial of the Rule 60(b) motion, the Seventh Circuit affirmed Judge Warren. *Margoles v. Johns*, 587 F.2d 885 (7th Cir. 1978).

Plaintiff's subsequent petition to the Seventh Circuit for a rehearing was denied by order of the Seventh Circuit on November 16, 1976.

Apparently undaunted, Dr. Margoles petitioned the United States Supreme Court for a writ of certiorari on February 2, 1977. The petition was denied by an order entered on March 28, 1977. Plaintiff's petition for rehearing by the Supreme Court was also denied on May 16, 1977.

Three years later, almost five years after this case was dismissed by Judge Warren and over five and one-half years after Dr. Margoles first appeared before Judge Warren at the April, 1975 pretrial conference, Dr. Margoles seeks to resurrect this action by bringing a *second* Rule 60(b) motion, claiming that the proceedings before Judge Warren were not consistent with the requirements of due process of law and that

the judgment entered against him must be declared void.

In essence, Dr. Margoles claims that Judge Warren should have recused himself from the case. He argues that the failure of Judge Warren to step aside violated the dictates of 28 U.S.C. § 455 (the "disqualification" statute) and the due process clause of the Constitution.

Because of the nature of the pending motion, Judge Warren transferred the case to me. I have accepted it for the purpose of resolving the motion. The parties were notified of the transfer in a letter from Judge Warren on February 5, 1981. Perhaps because I am the only judge in this district who was not old enough to shave when the early events giving rise to Dr. Margoles' problems with the government first were reported, neither side has objected to my exercise of jurisdiction over the matter.

In a flurry of letters received since the transfer, the plaintiff has requested and the defendant has resisted the scheduling of a hearing on the motion. My practice is to decide motions, except in very unusual cases, on briefs and written submissions. I have considered the issue presented here and concluded that a hearing is not necessary. Thus, the request for a hearing is denied. Both sides have had ample opportunity to submit to the court the materials necessary to resolving the motion at hand. The matter will be resolved based on the submissions in the file.

The question of Judge Warren's alleged legal inability to have heard this case is not being raised on appeal. Dr. Margoles' appeal was heard and denied, and the issue here is not whether Judge Warren erred, although much of plaintiff's argument is directed to that point. Rather, Dr. Margoles is collaterally attacking a judgment that has withstood one previous motion to vacate under Rule 60(b), an appeal to the Seventh Circuit, a requested rehearing before the Seventh Circuit, a certiorari petition to the Supreme Court, and a requested rehearing before the Supreme Court.

In attacking the judgment collaterally, plaintiff is confined to the *only* procedural avenue available to him: Rule 60(b)(4). That rule authorizes the vacation of a judgment if it is found to be "void." To show that the judgment entered on January 8, 1976 is void, plaintiff must show not simply error but that a fundamental due process was *in fact* denied him.

"A judgment is not void merely because it is or may be erroneous. (citations omitted). For a judgment to be void under Rule 60(b)(4), it must be determined that the rendering court was powerless to enter it. If found at all, voidness usually arises for lack of subject matter jurisdiction or jurisdiction over the parties. It may also arise if the court's action involves a plain usurpation of power or if the court has acted in a manner inconsistent with due process of law. In the interest of finality, the concept of setting aside a judgment on voidness grounds is narrowly restricted." *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220 (10th Cir. 1979), at 224–25.

The showing that must be made to attack this judgment is plain:

"A judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction ... or if it acted in a manner inconsistent with due process of law." *C. Wright and A. Miller, Federal Practice and Procedure*, § 2862, pp. 198–200.

A judgment is not void and subject to collateral attack under Rule 60(b)(4) if subsequent decisions prove it erroneous, *Marshall v. Board of Education*, 575 F.2d 417, 420–21 (3rd Cir. 1978), or if it was entered pursuant to a statute later determined to be unconstitutional. *United States v. City of Milwaukee*, 441 F.Supp. 1377, 1379 (E.D.Wis. 1977).

The challenge raised by plaintiff requires that he demonstrate not that there is room to question whether Judge Warren should have recused himself but, rather, that Judge Warren *in fact* was so biased or prejudiced against plaintiff that the proceeding was unfair. He must establish the

fact of prejudice over Judge Warren's affirmation that nothing occurred during his tenure as Attorney General that would interfere with his impartial handling of the case. He must also overcome the subsequent affirmation by the Seventh Circuit of the dismissal order upon which the challenged judgment is based.

■ While I agree with the principle stated in plaintiff's brief that "due process requires that 'a neutral and detached judge' preside over judicial proceedings", the basic contention which appears to permeate the plaintiff's entire argument is that the judgment is voidable upon a showing of the "appearance" of partiality or upon facts which might cause a "reasonable man" to question Judge Warren's impartiality. While such a presentation, if actually supported by the record, might cause a judge to recuse himself under 28 U.S.C. § 455, or justify reversal on appeal of a refusal to, it would not mandate a finding that a judgment, on a collateral attack such as this, should be declared void.

■ A litigant is denied the fundamental fairness to which he is constitutionally entitled if the judge of his case is unfairly biased against him. However, a litigant is not denied due process by either the "appearance" of partiality or by circumstances which might lead one to speculate as to a judge's impartiality. A litigant is denied due process if he is *in fact* treated unfairly.

In his brief, Dr. Margoles devotes considerable attention to arguing the applicability of 28 U.S.C. § 455. In trying to equate due process with § 455, however, he misconceives the law that must be applied on this collateral attack. Section 455 goes beyond "due process." Its requirement of avoiding even the appearance of partiality, even though bias or prejudice does not exist, is based on considerations over and above constitutional standards. Because § 455 is not the real issue here, it is largely irrelevant except to the extent that acts forming the basis for a violation of the statute may also violate due process. For these reasons, the § 455 recusal cases cited by Dr. Margoles are not particularly helpful in resolving the motion at hand.

Despite the arguable irrelevancy of plaintiff's § 455 recusal cases, I will discuss them because of the serious nature of his charges. Most of the cases arose on direct appeal or mandamus from a refusal by the judge to disqualify himself. In most of the cases, therefore, mere error was sufficient for reversal. Those few cases in which due process considerations were the basis for reversal involved serious facts supporting a finding of prejudice, not mere speculation and "appearances."

In *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), the Supreme Court held that prohibition law convictions rendered by the Mayor of an Ohio town, while acting as a judge, had to be reversed because the Mayor received a portion of the fees and costs levied by him against the convicted violators. The Mayor had a prejudicial pecuniary interest opposed to the interest of the defendants. Specifically, the Court concluded that,

"[I]t certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." 273 U.S. at 523, 47 S.Ct. at 441.

*Offutt v. U. S.,* 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), involved an appeal of a criminal contempt conviction. The Supreme Court in *Offutt* concluded that where a federal district judge had become personally antagonistic toward defense counsel during the course of a trial, the judge's subsequent conviction of the attorney for contempt committed during the trial pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure must be reversed. The court did not cite due process requirements in so holding; rather, it cited its "supervisory authority over the administration of criminal justice in the federal courts."

In *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), the Supreme Court

did cite the due process clause of the Fourteenth Amendment in holding, as in *Offutt*, that individuals alleged to have been in contempt of court were entitled to a trial before a different judge of the contempt charges. In that case, a Michigan state judge had served as a "one-man grand jury" and later adjudged two witnesses guilty of contempt for events which took place before him in the grand jury proceedings.

■ But even personal and direct involvement in proceedings creating the grounds for animosity toward a party does not necessarily require recusal and, more importantly, is not a sufficient showing of deprivation of constitutionally guaranteed fairness. In *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), the court ruled that a witness' challenge, though "disruptive, recalcitrant and disagreeable commentary," was still not "an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification." 376 U.S. at 584, 84 S.Ct. at 847. In *Ungar*, the witness was adjudged guilty of criminal contempt (for his conduct as a witness) in a post-trial hearing presided over by the judge before whom the contempt occurred at trial. The Supreme Court said that,

> "The characterization of the petitioner's conduct [at the trial] as contemptuous, disorderly, and malingering was at most a declaration of a charge against the petitioner, based on the judge's observations, which, without more, was not a constitutionally disqualifying prejudgment of guilt, . . ." 376 U.S. at 586–87, 84 S.Ct. at 848–849.

The question of a constitutional violation for failure of a trial judge to disqualify himself was discussed in a habeas corpus proceeding by the Seventh Circuit in *Barry v. United States*, 528 F.2d 1094 (7th Cir. 1976), another case cited by Dr. Margoles. There, the court pointed out that:

> "Nor did Judge Bauer's decision to preside at the trial lead to a constitutional violation. The Supreme Court has held that the due process clause prohibits a criminal trial in which the judge 'has a direct, personal, substantial, pecuniary interest in reaching a conclusion against [the defendant] in his case.' (citing *Tumey*) . . . More broadly, the Supreme Court has ruled that '[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which may lead him not to hold the balance nice, clear and true between the state and the accused, denies the latter due process of law.' (citing *Tumey*) The conflicts of interest present in the cases in which this standard was enunciated were, however, much more extreme than the lack of impartiality suggested here.

> "Furthermore, any error was harmless . . . (in part) since the same conclusion (of law) was reached independently by this Court on appeal." 528 F.2d at 1099–1100.

Finally, in *Howell v. Jones*, 516 F.2d 53 (5th Cir. 1975), the appellant complained "that because of ex parte communications between the judge who originally cited him for contempt and the judge who eventually tried him on (the subject) charge, he was denied a trial by an impartial tribunal." The Fifth Circuit Court of Appeals found no constitutional infirmity, pointing out that:

> "The leading cases cited by *Howell*, (*Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267; *In re Murchison, Tumey, supra*), are different from the case *sub judice*. They involved situations where there was actually some incentive to find one way or the other, i. e., financial considerations (*Ward & Tumey*) or previous participation by the trying judge in the proceedings at which the contempt occurred (*Murchison*). In this case, no such incentive is evident, and the record does not otherwise support Howell's contention that he was denied a trial by an impartial tribunal." *Id.* at 57–58.

None of the cases cited above involve situations in which a Rule 60(b)(4) motion has

successfully been used to challenge a judgment on the ground that the judge should have disqualified himself. Indeed, plaintiff cites only one case which has considered a collateral attack based upon a failure to recuse, and that was not pursuant to a Rule 60(b) motion but in response to an "extraordinary petition" which the court declined to further characterize. *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 403 F.2d 437, 438 n.1 (5th Cir. 1968).

Plaintiff relies extensively on *Kinnear-Weed* for several propositions. Unfortunately for the plaintiff, his reliance is misplaced. The plaintiff in *Kinnear-Weed* sought, and was ultimately denied [*See* same case reported at 441 F.2d 631 (5th Cir. 1971)], the opportunity to reopen a judgment entered 12 years earlier. The Fifth Circuit, in its 1968 order referenced throughout plaintiff's brief, merely held that the plaintiff's accusations should be heard and determined by the district court. The Court of Appeals was plainly impelled to so hold by the gravity of the charges against a deceased judge, charges which, if true, would not just have required that the trial judge should have disqualified himself, but would have established that he corruptly induced and participated in the proceeds of the settlement of the case.

Because of the gravity of the charges and the need to insure that the administration of justice had in fact been pure, the Court of Appeals ordered a factual hearing. 403 F.2d at 440–41. Had the trial judge in fact been corrupt, the plaintiff would have been entitled, on due process grounds, to have the judgment set aside. The case carries no suggestion that a lesser showing would have entitled the plaintiff to relief.

Because plaintiff has suggested the applicability to this case of the first appellate decision in *Kinnear-Weed*, the defendants have argued the applicability to this case of the second consideration of *Kinnear-Weed* by the Fifth Circuit. In reviewing and affirming the district court's dismissal of plaintiff's petition after the previously mandated hearing, the Court of Appeals rejected as entirely inadequate plaintiff's showing which presented

"no more than the speculative musings of a losing litigant"

about connections and relations between defendant and the deceased judge which were

"trival or insignificant matters that merely furnish springboards for speculation, . . ." 441 F.2d at 634, 636.

I believe the observations of the Fifth Circuit in *Kinnear-Weed II* are equally applicable here. I have carefully reviewed the documentation submitted by Dr. Margoles on the issue at hand and find it far short of the kind of evidence necessary for him to even get a hearing, let alone carry the day. He has tried to sink a battleship with a peashooter. Obviously, he has been unsuccessful.

While this decision could end here, Dr. Margoles' allegations, though they may not merit it, will be further explored. Therefore, I move on and note that even if adherence to the disqualification statute were the requisite test, nothing presented convinces me that Judge Warren acted improperly in not recusing himself from this case.

■ Under 28 U.S.C. § 455 as it existed prior to December 5, 1974, Judge Warren clearly would not have been required to recuse himself. At that time, § 455 provided as follows:

"Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein."

Under this language, a judge was to disqualify himself in any case in which he (1) "has a substantial interest," (2) "has been of counsel," or (3) "is or has been a material witness." Prior to December 5, 1974, if a judge did not fit within one of the first three categories he was not required to recuse himself unless he met the "subjective" test of category four. The "subjective" test was whether his "relationship to

any party" or attorney, in "his opinion," rendered it "improper" that he not sit. As the Harvard Law Review noted in 1973, "Rather than asserting, for example, that only an impartial judge should participate in a case, section 455 merely requires disqualification for a few likely *sources* of partiality. Hence, if a judge satisfies himself that his situation does not fall within one of the three mandatory categories as narrowly construed by reviewing courts, and if his conscience does not move him to disqualify himself under the discretionary clause, he may hear the case even if he has, for example, a personal bias against a party." 86 Harv.L.Rev. 736, at 742. (Emphasis supplied)

It is clear that in 1974 Judge Warren did not fit into any of the categories of § 455 which gave rise to mandatory recusal. The first, that of "substantial interest," was limited by existing case law to economic interests. *See, e. g., United States v. Bell*, 351 F.2d 868, 878 (6th Cir. 1965), *cert. denied* 383 U.S. 947, 86 S.Ct. 1200, 16 L.Ed.2d 210 (1966). Dr. Margoles had not alleged that Judge Warren had a financial interest in this slander action against Ms. Johns and The Journal Company.

The second category requiring recusal, that a judge must have been "of counsel" to be disqualified, has been construed literally. "Unless the judge was an attorney for one of the parties in connection with the specific case before him, he would not be regarded as having been 'of counsel.'" 71 Mich.L. Rev. at 550 and cases cited therein at n.55.

The third category, the "material witness" provision, was held to be inapplicable under that section unless the judge was actually called as a witness. *United States v. Re*, 372 F.2d 641 (2nd Cir.), *cert. denied* 388 U.S. 912, 87 S.Ct. 2112, 18 L.Ed.2d 1352 (1967).

Turning to the fourth or "subjective" category for disqualification under former § 455, that in which a judge is "so related to or connected with any party or his attorney

as to render it improper, in his opinion, for him to sit on the trial ..," it appears that, even without the "in his opinion" limitation, Judge Warren was not required to recuse himself. Prior to 1974, the phrase "so related to or connected with" was generally construed to refer to a familial or financial relationship. By absence of allegation, I conclude that Judge Warren had neither with either Dr. Margoles, Ms. Johns or The Journal Company. In any event, as discussed above, "... disqualification for being 'so related or connected' is generally 'a matter confided to the conscience of the particular judge.'" *Weiss v. Hunna*, 312 F.2d 711, 714 (2nd Cir. 1963). A judge's exercise of his discretion under this "subjective" standard is rarely overturned on appeal, even in instances where a judge held stock in a party prior to trial, *United States Fidelity & Guaranty Company v. Lawrenson*, 34 F.R.D. 121 (D.Md.), *affd.* 334 F.2d 464 (4th Cir.), *cert. denied* 379 U.S. 869, 85 S.Ct. 141, 13 L.Ed.2d 71 (1964), or where a judge previously worked as a lawyer for a party. *Darlington v. Studebaker-Packard Corp.*, 261 F.2d 903, 906 (7th Cir.), *cert. denied* 359 U.S. 992, 79 S.Ct. 1121, 3 L.Ed.2d 980 (1959).

Even if the issue here were merely a question of error on appeal, I have no difficulty concluding that Judge Warren was not required to disqualify himself under 28 U.S.C. § 455 as it existed prior to December 4, 1974.

After this action was filed § 455 was amended to bring the statutory grounds for disqualification of a judge into conformity with the recently adopted canon of the Code of Judicial Conduct [1] relating to disqualification of judges for bias, prejudice, or conflict of interest. The amendment was effective on December 5, 1974. Dr. Margoles, relying primarily on *Potashnick v. Port City Construction Company*, 609 F.2d 1101 (5th Cir. 1980), argues that he is entitled to the benefit of the amendment on his present motion.

---

1. Canon 3C of the Code of Judicial Conduct was adopted by the Judicial Conference of the United States in April, 1973.

In *Potashnick*, the Fifth Circuit Court of Appeals held that "... the amended version of 28 U.S.C. § 455 is applicable to a case filed prior to the December 5, 1974 effective date of the amendment, when the trial of the case does not commence until after the effective date." In reaching this conclusion, however, the court noted that there was "substantial authority to the contrary" and that "[n]either the language of the statute nor the cases discussing it clearly indicate whether the amendments were intended to apply to actions filed but not actually brought to trial prior to December 5, 1974, or only to cases instituted after that date." *Id.*

■ Notwithstanding the Fifth Circuit's conclusion in *Potashnick*, a majority of courts construing the amendment have reached the conclusion that an action must have been *filed* after December 5, 1974 in order for amended § 455 to apply to disqualification motions. *In re Virginia Electric & Power Company*, 539 F.2d 357, 366 (4th Cir. 1976); *Bradley v. Milliken*, 426 F.Supp. 929, 932 (E.D.Mich.1977); *U. S. v. Haldeman*, 559 F.2d 31 (D.C.Cir.1976); *Duplan Corporation v. Deering Milliken, Inc.*, 400 F.Supp. 497, 505 (D.S.C.1975) and *In re Continental Vending Machine Corp.*, 543 F.2d 986, 995 n.4 (2nd Cir. 1976), all have concluded that the amendment to § 455 is inapplicable to actions commenced prior to December 5, 1974. None of the reported cases considering the issue involved due process challenges under Rule 60(b)(4); instead, all have been appeals or petitions directly from refusals to recuse.

In *In re Virginia Electric and Power Company, supra*, the disqualification issue was sent back to the district court for reconsideration under *unamended* § 455. 539 F.2d at 369. In *In re Continental Vending Machine Corp., supra*, the court held that the district judge was not required to disqualify himself under unamended § 455 but suggested that he might do so in the interest of avoiding the appearance of impropriety. In the remaining cases, the disqualification issue was decided against the movant.

A review of the cases cited compels me to conclude that the applicable disqualification provisions to be considered, if § 455 were to be considered at all in this proceeding, is the statute that existed when this case commenced and Judge Warren assigned to decide it. Not only has Dr. Margoles failed to show that any of the mandatory requirements of the earlier statute were applicable, he has not overcome the considered and expressed conclusion of Judge Warren that there was nothing in his background or experience which impaired his impartiality in this case.

■ While this could be another place to conveniently end the discussion, I wish to note that even if recusal, not due process, were the issue, and even if the amendment to § 455 applied, the plaintiff's motion would fail.

The legislative history of Public Law 93–512, which enacted the 1974 revision of § 455, makes clear a major purpose in amending the statute was to promote public confidence in the judicial system. *See* 1974 U.S.Code Cong. & Adm.News at 6352. This purpose is inherent in the substitution of an "appearance of bias" test for the "bias in fact" test which existed under former § 455. Dr. Margoles places heavy reliance on the phrase which requires disqualification of a judge in any proceeding "in which his impartiality might reasonably be questioned."

Dr. Margoles was as aware in 1974 as he is now of whatever facts and circumstances create in his mind an appearance of partiality. He knew that Judge Warren had been the Attorney General of Wisconsin and he knew of the involvement of the office of the Attorney General in matters involving him. Despite this knowledge, he chose not to appeal Judge Warren's refusal to recuse or to even include among his appellate arguments the "appearance" of which he now complains. One conclusion may be that his attorney at the time did not find in the circumstances the same appearance of partiality that plaintiff now urges in support of his motion.

Dr. Margoles maintains that his motion is based upon evidence only recently discovered. An examination of his "evidence," however, demonstrates that nothing of consequence to any issue presented by his motion is either of recent origin or discovery. Of the 43 exhibits submitted, only ten can arguably be claimed to have come to plaintiff's attention after judgment was entered in this case in 1976. I have examined the materials and I conclude that they do not demonstrate any lack of impartiality on the part of Judge Warren.

As Judge Warren himself noted in *Matter of Searches Conducted on March 5, 1980*, 497 F.Supp. 1283 (1980):

"... individuals who become members of the federal bench do not arrive there from some cloistered order. They are perforce persons who have engaged in public affairs, often as politicians or officials from the ranks of the executive branch of government. They are not sterile creatures who don judicial robes without any prior contacts in the community but rather are very likely to be men and women with a broad exposure to all kinds of citizens of all shades of persuasion and background."

As also noted by Judge Warren in *Searches, supra*, at the time he served as Attorney General:

"... the Attorney General's Office had almost 500 employees. The office was responsible for providing legal services and law enforcement services across the state. At any one time, literally thousands of cases were being prosecuted and defended by the Attorney General's Office. Case records were maintained by computers and although each case was brought in the name of the Attorney General, his personal knowledge of an individual case or a prosecution would be only such as would be made known to him in 'justification memos' prior to commencing a lawsuit or in his staff meetings with the various units or in memoranda designed to keep the 'front office' apprised of developments."

While it is true that Judge Warren had some knowledge of Dr. Margoles, nothing included in the plaintiff's exhibits leads me to conclude that the judge had a duty to disqualify himself from presiding over this slander case. Instead, I have no trouble concluding that he properly exercised his then-existing "duty to sit" by denying the plaintiff's motion. Accordingly, the plaintiff's Rule 60(b) motion is denied.

So Ordered at Milwaukee, Wisconsin, this 25 day of February, 1981.