767 F.2d 922
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNI-BOND, INC., A MICHIGAN CORPORATION, PLAINTIFF-APPELLANT,
v.
NATIONAL STEEL CORPORATION, A DELAWARE CORPORATION; AND
KASLE STEEL COMPANY, A MICHIGAN CORPORATION;
DEFENDANTS-APPELLEES.
 NO. 84-1278
 United States Court of Appeals, Sixth Circuit.
 6/3/85
 
 E.D.Mich.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: ENGEL and MARTIN, Circuit Judges; and PHILLIPS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This was a protracted antitrust case, in which the plaintiff, Uni-Bond, Inc. (formerly Lafayette Steel Company), claimed that the defendants, National Steel Corporation and Kasle Steel Company, conspired to fix prices in the sale of first operation blanks to General Motors Corporation, coupled with a refusal by National to sell steel to the plaintiff when steel was in short supply. It came to trial in early 1982, more than seven years after it was filed. At the close of plaintiff's presentation of evidence the district court dismissed the case under Civil Rule 41(b), and this Court affirmed the district court's findings as not clearly erroneous. Uni-Bond v. National Steel Corp., No. 82-1172 (6th Cir. April 26, 1983) (per curiam).
 
 
 2
 Subsequent to this affirmance, an unnamed relative of Judge Avern Cohn's contacted plaintiff's counsel and expressed surprise that the judge had not disclosed his associations with Leonard Kasle, president of and a witness for the defendant Kasle Steel. Counsel initiated an extensive investigation over a period of several months into Judge Cohn's relationship with the defendants. Plaintiff then moved for relief from judgment under Civil Rule 60(b)(6) on March 21, 1984, arguing that Judge Cohn should have recused himself or disclosed his prior contacts with Kasle and Fred Ginsberg, president of the Great Lakes Steel division of National.
 
 
 3
 On March 27, 1984, before any response by defense counsel, Judge Cohn denied the motion in a written opinion. He wrote,
 
 
 4
 Contrary to the assertions of [plaintiff] I do not have and have never had a 'long-standing personal and family relationship' with Mr. Kasle or Mr. Ginsberg. On the contrary, while I know Ginsberg, I do not know his family and for at least eighteen years before the day he appeared in my courtroom as a witness I had not as much as spoken to him. As to Kasle, he is not a close personal friend of mine. There is certainly a distinction between a friend and an acquaintance. At most Kasle is an acquaintance. There is nothing in my relationship to Ginsberg or to Kasle that requires me to disqualify myself.
 
 
 5
 Slip op. at 2-3. Plaintiff moved the court to reconsider and filed additional affidavits on April 5, 1984. Judge Cohn denied the motion in open court on April 11, 1984, following this with a written opinion on April 17, 1984. The opinion responded to the specific allegations in the affidavits and held that plaintiff had not shown that a different disposition of the motion for relief must result on reconsideration, movant's duty under E.D. Mich. Local R. 17(k)(3). Plaintiff timely appealed.
 
 
 6
 An initial question is whether, as plaintiff contends the 1974 amendments to 28 U.S.C. Sec. 455 applied to this pending case. Congress provided, 'This Act shall not apply to the trial of any proceeding commenced prior to the date of this Act, nor to appellate review of any proceeding which was fully submitted to the reviewing court prior to the date of this Act.' Act of Dec. 5, 1974, Pub. L. No. 93-512, Sec. 3, 88 Stat. 1609, 1610. It may well be, as plaintiff suggests, that a primary purpose of this provision was to prevent a flood of recusals in pending cases, a purpose not relevant when the case was subsequently transferred to a new judge in any case. Nevertheless, the statute is explicitly prospective, and we can see no legal justification for its application when by its clear terms it does not apply.
 
 
 7
 At the time this case was filed, 28 U.S.C. Sec. 455 read in full:
 
 Sec. 455. Interest of justice or judge
 
 8
 Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.
 
 
 9
 This Court has taken the minority position that section 455 has no timeliness requirement. United States v. Amerine, 411 F.2d 1130, 1134 (6th Cir. 1969); accord Barry v. United States, 528 F.2d 1094, 1097 n.7 (7th Cir.), cert. denied, 429 U.S. 826 (1976). But cf. Crowder v. Conlan, 740 F.2d 447, 453-54 (6th Cir. 1984) (timeliness requirement for recusal motions under 28 U.S.C. Sec. 144).
 
 
 10
 Although the requirements for recusal for substantial interest, being of counsel, or being a material witness were mandatory, Amerine, 411 F.2d at 1133-34, disqualification for relation or connection to a party or attorney 'was obligatory only when a judge, in examining his own conscience, found bias unavoidable. In close caes, moreover, the judge had a 'duty to sit' in spite of his predilections.' Roberts v. Bailar, 625 F.2d 125, 128-29 (6th Cir. 1980) (footnotes omitted). The question on appeal is whether Judge Cohn had an actual bias (whether or not it actually affected the outcome of the case), and so abused his discretion in failing to recuse himself--the same test applied by Judge Cohn, though under a different analysis.
 
 
 11
 It is obvious that plaintiff has produced no allegations of substance with regard to Judge Cohn's acquaintance with Fred Ginsberg. Although plaintiff continues to be concerned about Judge Cohn's unexplained recusal in an unrelated case also involving Ginsberg, there are many reasons why a judge may recuse himself and it is not always proper to explain them in open court.
 
 
 12
 The most serious allegations with regard to Leonard Kasle were that various neighbors and members of the bar thought of Judge Cohn and Kasle as good friends and that their fathers were 'almost like brothers.' The allegation of close friendship is not to be taken lightly. Judge Cohn, however, characterized the connection as acquaintance rather than friendship. Besides Judge Cohn's own opinion, we are impressed with the very lack of hard evidence supplied by the plaintiff after months of investigation by a private investigator and member of the bar.
 
 
 13
 The fathers' friendship might be a weighty factor under other circumstances, but Kasle's father's death in 1969 shows that this was no longer a consideration at the time of the case. Kasle's wife referred to Judge Cohn as 'a friend of ours' in a 1975 deposition in an unrelated case. The context, however, shows that she did not necessarily mean he was a close friend; in fact, she seemed not to know him well and did not know his law firm. There were also allegations that Kasle and Judge Cohn lived in physical proximity and shared membership in various organizations and committees.
 
 
 14
 We are satisfied that Judge Cohn was acquainted, perhaps well-acquainted, with Kasle, but there has been no showing that they were close friends. It is simply not to be expected that a judge must recuse himself every time he is acquainted with counsel or a party. In this circuit alone, there is but one district judge or senior district judge stationed in London, Ky., in Pikeville, Ky., in Catlettsburg, Ky., in Paducah, Ky., in Bay City, Mich., in Port Huron, Mich., and in Mansfield, Ohio. It is likely that in each case the judge is acquainted with practically every prominent person in the community. A rule requiring automatic recusal for acquaintance would make federal justice almost unworkable in such communities, and we decline to adopt it.
 
 
 15
 Plaintiff asks in the alternative that we remand the case to a different district court to conduct an evidentiary hearing. It is true that it would have been the better practice to have a different district judge on the court conduct an evidentiary hearing and rule of the recusal question, as was done below in Margoles v. Johns, 660 F.2d 291 (7th Cir. 1981), cert. denied, 455 U.S. 909 (1982). The failure to do so, however, was not reversible error.
 
 
 16
 Plaintiff also makes the novel argument that its seventh amendment right to a jury trial was abridged, in that it waived its right to a jury trial without knowledge of Judge Cohn's alleged bias. The right to an impartial and disinterested tribunal, however, is guaranteed by the due process clause. Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980). We do not believe that the seventh amendment offers an additional and independent safeguard of that right. Such a conclusion would imply that, constitutionally, the right to an impartial tribunal is of less import in those cases in which the seventh amendment does not guarantee a jury.
 
 
 17
 The judgment is affirmed.