**UNITED STATES of America, ex rel. George DEL VECCHIO, Petitioner,**

**v.**

**ILLINOIS DEPARTMENT OF CORRECTIONS, Respondent.**

**No. 90 C 4160.**

United States District Court, N.D. Illinois, E.D.

June 9, 1992.

George Del Vecchio, pro se.

Margaret L. Paris, Matthew F. Kennelly, Cotsirilos, Stephenson, Tighe & Streicker, James Brian Haddad, Northwestern University School Of Law, Legal Clinic, Chicago, Ill., for petitioner.

Terence Madsen, Arleen C. Anderson, Illinois Attorney General's Office, Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Petitioner George Del Vecchio seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 concerning his conviction and sentence of death resulting from a 1979 trial in the Circuit Court of Cook County, Illinois.

### FACTS

The following facts are taken from the Illinois Supreme Court's opinions in *People v. Del Vecchio*, 105 Ill.2d 414, 86 Ill.Dec. 461, 465–66, 475 N.E.2d 840, 844–45 (1985) (hereinafter referred to as *Del Vecchio I*) and *People v. Del Vecchio*, 129 Ill.2d 265, 135 Ill.Dec. 816, 819–20, 544 N.E.2d 312, 315–16 (1989) (hereinafter referred to as *Del Vecchio II*).[1] In 1979, following a jury trial in the Circuit Court of Cook County, Illinois, petitioner George Del Vecchio ("Del Vecchio") was convicted of murder, burglary, rape, and deviate sexual assault. At the conclusion of the sentencing hearing in the case, the jury found that there existed one or more factors in aggravation as set forth in section 9–1(b) of the Criminal Code of 1961 (Ill.Rev.Stat. ch. 38, ¶ 9–1(b)). The jury also found there were no mitigating factors sufficient to preclude a sentence of death. The sentence of death was imposed. Del Vecchio was also sentenced to 15 years imprisonment for rape, 6 years for deviate sexual assault, and 7 years for burglary. On direct appeal to the Illinois Supreme Court, the convictions and sentences were affirmed. *Del Vecchio I*, 105 Ill.2d 414, 86 Ill.Dec. 461, 475 N.E.2d 840. The United States Supreme Court denied Del Vecchio's petition for writ of certiorari. *Del Vecchio v. Illinois*, 474 U.S. 883, 106 S.Ct. 204, 88 L.Ed.2d 173 (1985).

Following the Supreme Court's denial of certiorari, Del Vecchio filed a petition under the Post–Conviction Hearing Act (Ill. Rev.Stat. ch. 38, ¶ 122–1 *et seq.*), and counsel was appointed. Without an evidentiary hearing, the Circuit Court of Cook County granted the State's motion to dismiss the petition. The Illinois Supreme Court affirmed the dismissal of the post-conviction petition. *Del Vecchio II*, 129 Ill.2d 265, 135 Ill.Dec. 816, 544 N.E.2d 312. The United States Supreme Court denied Del Vecchio's petition for writ of certiorari. *Del Vecchio v. Illinois*, 494 U.S. 1062, 110 S.Ct. 1540, 108 L.Ed.2d 779 (1990). Del Vecchio then filed in this court the pending petition for a writ of habeas corpus. Counsel was appointed to represent him in prosecuting the petition.[2] An amended petition was filed on Del Vecchio's behalf by his counsel.

---

1. Under 28 U.S.C. § 2254(d), factual findings of a state court, including a state appellate court, are presumed correct if the findings are made after a hearing on the merits, and are fairly supported by the record. *Lewis v. Huch*, 964 F.2d 670, 671 (7th Cir.1992).

2. The counsel appointed was James B. Haddad, Esq., a highly distinguished professor of law at Northwestern University School of Law in Chicago. The court wishes to pause to note with great sorrow Professor Haddad's untimely death on February 7, 1992. Professor Haddad tirelessly devoted a substantial part of his life to legal work on behalf of indigents. His passing

At Del Vecchio's 1979 jury trial in the Circuit Court of Cook County, Karen Canzoneri testified that she and her six-year old son, Tony, occupied the first-floor and attic levels in a two-flat building in Chicago. On the evening of December 22, 1977, Mrs. Canzoneri, Tony, and Santo Falcone had driven to Lombard, where Mrs. Canzoneri purchased a stereo receiver. When they returned to Chicago they stopped at a tavern, and while there they saw Del Vecchio and his wife, Rose, both of whom they knew. When they left the tavern approximately a half hour later, Rose Del Vecchio came with them. After assembling the stereo which Mrs. Canzoneri had purchased, Falcone put Tony to bed downstairs. When Falcone returned upstairs, Del Vecchio was with him. Del Vecchio brought with him a briefcase containing marijuana which he, Falcone, and Rose Del Vecchio smoked. After approximately an hour, Mrs. Canzoneri asked them to leave.

At about dawn the following morning, Mrs. Canzoneri was awakened when she heard footsteps. When she asked who was there, Del Vecchio identified himself, stating he "wanted to talk." Mrs. Canzoneri attempted to shoot Del Vecchio with a pistol which Falcone had previously given her, but Del Vecchio slapped it out of her hand before she could fire. Del Vecchio would not permit Mrs. Canzoneri to check on Tony, responding that Tony was sleeping peacefully. When she attempted to leave the room to check on her son, Del Vecchio pushed her back on the bed, kissed her face, breasts, vagina, and legs, and despite her request to stop, had intercourse with her. During the intercourse, she heard the telephone ring. She asked Del Vecchio to let her answer it because it was probably her mother who lived across the street. She told him that unless she answered the telephone, her mother would come over. Del Vecchio did not respond. Mrs. Canzoneri could not determine which of the three telephones in her home was ringing. The ringing stopped. The telephone then rang

again and Del Vecchio went downstairs. Mrs. Canzoneri looked for the telephone but could find only the cord. The telephone, severed from the cord, was found later when the police searched the premises. She ran downstairs and across the street to her mother's house. Mrs. Canzoneri told her mother she had been raped and called the police.

Chicago police officer William Sacco testified that five police officers responded to the call of a rape in progress. Mrs. Canzoneri told the officers that there was a man with a gun in her house, that she knew the man and that it was Del Vecchio. After searching the first floor, the officers went up to the attic bedroom. Alerted by the sound of snow crunching outside the window, Officer Sacco saw Del Vecchio crawling on the roof and ordered him inside. Del Vecchio responded by blurting, "I didn't kill nobody." Del Vecchio was arrested, given *Miranda* warnings, and handcuffed. Officer Richard Elmer testified that, after searching various areas of the building and interviewing a neighbor, he and other officers discovered a crawl space located under the stairs. They opened the door and found the body of young Tony Canzoneri. Later examination showed that the boy's trachea, carotid artery, jugular vein and vagus nerve were completely severed, and the third and fourth cervical vertebrae were fractured.

It appears from the testimony that when Mrs. Canzoneri entered her home earlier that evening, she left her purse on the kitchen table. Her purse, among other things, contained her keys, and a credit card. When Del Vecchio was taken into custody, the credit card was in his possession.

In 1965, over twelve years before the above-described events, Del Vecchio had pleaded guilty to the murder of an individual named Fred Christiansen. The relevant facts surrounding Del Vecchio's 1965 conviction are as follows. On February 2,

removed from this case and from the entire legal community one of the finest criminal law scholars of our time. This court, though not alone in this sentiment, wishes to express its

gratitude for Professor Haddad's scholarly and benevolent contributions to the betterment of justice in this country. He will be long missed.

1965, Del Vecchio was interrogated in connection with the murder of Christiansen. At that time he confessed to and provided factual details of the crime. An assistant State's Attorney took a written statement and later prepared a report for his supervisors on the investigation, interrogation, and confession. One of the supervisors was Louis B. Garippo, then the chief of the State's Attorney's criminal division. The Christiansen murder received a good deal of publicity because it represented a new and alarming phenomenon: a robbery spree and a killing by a young person under the influence of drugs. At the time of the Christiansen murder Del Vecchio was 16 years old and would turn 17 on March 1, 1965, at which age he could be tried as an adult. In mid-February Del Vecchio's attorney went to Garippo and asked Garippo to expedite the filing of the indictment so that Del Vecchio could be sentenced as a youth. Garippo agreed and a grand jury promptly indicted Del Vecchio for the Christiansen murder. On February 24, 1965, Del Vecchio pleaded guilty and was sentenced that same day.

## DISCUSSION

Del Vecchio's petition for a writ of habeas corpus asserts fourteen challenges to the constitutionality of his conviction and death sentence. Del Vecchio expressly has withdrawn from this court's consideration while reserving for further review certain of these fourteen challenges.[3] The court will address each remaining constitutional challenge.

## I. GROUND I: TRIAL JUDGE'S CONFLICT OF INTEREST

■ Del Vecchio contends that he was denied due process because his 1979 trial judge, Cook County Circuit Judge Louis B. Garippo, had a conflict of interest stemming from Judge Garippo's involvement in the 1965 case in which Del Vecchio was convicted of the murder of Fred Christiansen. As stated above, Garippo was chief of the State's Attorney's criminal division in 1965. Del Vecchio speculates that perhaps Judge Garippo regretted his decision in 1965 to expedite Del Vecchio's indictment. That decision allowed Del Vecchio to be sentenced as a youth, which presumably helped him obtain an earlier release from prison than he would have obtained had he been convicted as an adult of the 1965 murder. As a result of his early release Del Vecchio was able to commit the crimes in 1977 of which he was convicted in 1979. One of the aggravating factors introduced at the sentencing hearing in the 1979 case was the 1965 murder of Fred Christiansen.

Del Vecchio argues that Judge Garippo's involvement with Del Vecchio's 1965 case created the appearance of bias on Judge Garippo's part requiring his disqualification from presiding over Del Vecchio's 1979 trial and sentencing proceedings. Del Vecchio claims that he need not show actual bias by Judge Garippo in order to establish a due process violation.[4]

■ Most matters relating to judicial disqualification do not rise to a constitutional level. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 106 S.Ct. 1580, 1584, 89 L.Ed.2d 823 (1986). What degree or kind of interest is sufficient to disqualify a judge from sitting "cannot be defined with precision." *Id.* 106 S.Ct. at 1585 (quoting *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)). One formulation of the issue is whether the "situation is one 'which would offer a possible temptation to

---

**3.** The constitutional challenges withdrawn by Del Vecchio include his challenge to the use of victim impact testimony (Ground VII) and certain claims as to the constitutionality of the Illinois death penalty statute (Grounds XIII–XIV). Del Vecchio also has withdrawn his challenge to notice of death eligibility under Illinois law (Ground VIII), reserving the right to renew this claim in any future sentencing hearing. Additionally, Del Vecchio has withdrawn his objection regarding the right to have counsel present at psychiatric interviews (Ground XI),

reserving the right to renew the objection at any future Illinois hearing in this case.

**4.** In the alternative, Del Vecchio argues that Judge Garippo demonstrated actual bias through the statements the judge made concerning Del Vecchio's worthiness for the death penalty. (*See* Petitioner's Mem. in Opp., p. 26 n. 12.) As discussed in the text below, the court finds this argument unpersuasive.

the average ... judge to ... lead him not to hold the balance nice, clear and true.' " *Aetna,* 106 S.Ct. at 1585 (quoting *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972)).

■ Bias or prejudice on the part of a judge can implicate due process concerns. *Aetna,* 106 S.Ct. at 1585. Allegations of judicial bias or prejudice, however, involve difficult issues and "only in the most extreme of cases would disqualification on this basis be constitutionally required." *Id.* General allegations of judicial bias and prejudice do not amount to a due process violation. *Id.*

The Seventh Circuit has not delineated the type of judicial bias in a criminal case which requires disqualification under the Due Process Clause. The Seventh Circuit, however, has commented that

> [o]ur *Margoles* [*v. Johns,* 660 F.2d 291 (1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982)] decision ..., although a civil case, makes us hesitate to hold that a mere appearance of prejudice is enough to overturn a state criminal conviction on federal constitutional grounds—especially since it is not necessary to hold that in this case....

*Walberg v. Israel,* 766 F.2d 1071, 1077 (7th Cir.1985), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985). In *Margoles,* a civil case, the Seventh Circuit held that a

> litigant is denied the fundamental fairness to which he is constitutionally entitled if the *judge* of his case is unfairly biased against him. However, a litigant is not denied due process by either the "appearance" of partiality or by circumstances which might lead one to speculate as to a judge's impartiality. A litigant is denied due process if he is *in fact* treated unfairly.

*Margoles,* 660 F.2d at 296 (emphasis in original). After reviewing various judicial disqualification cases, the court stated that "[t]hose few cases in which due process considerations were the basis for reversal involved serious facts supporting a finding of prejudice, not mere speculation and 'ap-

pearances.' " *Id.* Due process violations occur

> where there [is] actually some incentive [for the judge] to find one way or the other, i.e., financial considerations [*Ward,* 93 S.Ct. 80; *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *Aetna,* 106 S.Ct. 1580] or previous participation by the trying judge in the proceedings at which the contempt occurred [*In re Murchison,* 75 S.Ct. 623; *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 2704–05, 41 L.Ed.2d 897 (1974); *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 504–05, 27 L.Ed.2d 532 (1971) ].

*Margoles,* 660 F.2d at 297 (quoting *Howell v. Jones,* 516 F.2d 53 (5th Cir.1975)).

Although the Seventh Circuit has not directly addressed the issue of judicial bias in the context of a criminal case, the Sixth Circuit has applied the "actual bias" rule in criminal cases. In *Corbett v. Bordenkircher,* 615 F.2d 722 (6th Cir.1980), a case factually analogous to the immediate case, a habeas petitioner argued that due process required the trial judge to recuse himself because "the judge had, in the past as a county attorney and as a commonwealth attorney, prosecuted [the petitioner] for crimes in four instances ... one of which convictions was relied upon as a basis for charging [the petitioner] with being an habitual offender" in the case over which the judge later presided. *Id.* at 723. The petitioner made "no allegation that the judge was actually prejudiced against [him]." *Id.* at 723–24. The court refused to "hold that simply because a trial judge has prosecuted a defendant in the past in performing his duty as a public official, due process requires that the judge recuse himself." *Id.* at 724.

The court in *Corbett* explicitly followed its decision in *Jenkins v. Bordenkircher,* 611 F.2d 162 (6th Cir.1979), the facts of which were limited to a judge who had earlier prosecuted the petitioner for "totally unrelated criminal charges." *Id.* at 167. In *Jenkins,* the Sixth Circuit held that

> [a]bsent some showing of hostility or prejudgment we will not assume that a state

court judge would not be able to give a defendant a fair trial solely because of his earlier contacts with the defendant in prosecuting totally unrelated charges.

*Id.* at 166.[5] Thus, the *Corbett* decision expanded the holding in *Jenkins* by eliminating any requirement that the two relevant criminal cases be unrelated.

■ In light of the Seventh Circuit's opinions in *Margoles* and *Walberg*, this district court believes the Seventh Circuit would likely follow the Sixth Circuit's decisions in *Jenkins* and *Corbett*.[6] In fact, in order to uphold Del Vecchio's conviction against a constitutional challenge on this point, the Seventh Circuit need not go as far as did the Sixth Circuit since Judge Garippo's involvement with Del Vecchio's 1965 case was significantly less than the involvement of the prosecutors in either *Corbett* or *Jenkins*. This district court believes the Seventh Circuit would apply the holding in *Margoles*—that a litigant is denied due process only if he is in fact treated unfairly—to the criminal context. Consequently, this district court believes that the Seventh Circuit would hold that the "mere appearance" of bias or prejudice is not enough to overturn a state criminal conviction on federal constitutional grounds.[7] *See Walberg,* 766 F.2d at 1077.

It is not argued that Judge Garippo would reap any pecuniary benefits from Del Vecchio's conviction or the imposition of the death penalty. *See Aetna,* 106 S.Ct.

at 1585 (judge should recuse himself if he has a "direct, personal, substantial, [and] pecuniary" interest in the case). Moreover, there has been no showing of hostility between Judge Garippo and Del Vecchio. *Cf. In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (individual who was held in contempt is entitled to a trial before a different judge on contempt charges due to personal antagonism with initial judge); *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 2704-05, 41 L.Ed.2d 897 (1974) (judge became "embroiled" in controversy of the contemptuous conduct); *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 504-05, 27 L.Ed.2d 532 (1971) (contemnor's insults to judge strike "at the most vulnerable and human qualities of a judge's temperament"). No actual incentive is evident here.

■ Any claim that Judge Garippo had a direct, personal interest in seeing Del Vecchio convicted and punished is speculative at best. Del Vecchio claims that Judge Garippo's statement that Del Vecchio was more worthy of the death penalty than John Wayne Gacy, whose case was also on Judge Garippo's trial call, exhibits the judge's prejudice. Del Vecchio, however, gives this court no reason to disbelieve Judge Garippo's testimony in which he explained that "of the three death penalty cases on his docket in 1979-80, based on the psychiatric reports available to him, Gacy was the least likely candidate for the

---

**5.** The Sixth Circuit in *Jenkins* relied on the Fifth Circuit's denial of habeas relief in "two cases where it was contended that a constitutional violation occurred because a judge who had been involved previously in the prosecution of a defendant for unrelated matters presided at that defendant's subsequent trial." *Jenkins,* 611 F.2d at 166 (citing *Murphy v. Beto,* 416 F.2d 98 (5th Cir.1969) and *Goodspeed v. Beto,* 341 F.2d 908 (5th Cir.1965), *cert. denied,* 386 U.S. 926, 87 S.Ct. 867, 17 L.Ed.2d 798 (1967)).

**6.** The Sixth and Seventh Circuit cases discussed herein appear to contradict the Supreme Court's assertion that the Due Process Clause "'may sometimes bar trial by judges who have no actual bias'" and that "'justice must satisfy the appearance of justice.'" *Aetna,* 106 S.Ct. at 1587 (quoting *In re Murchison,* 75 S.Ct. at 625). As discussed above, however, the Supreme Court, in practice rather than word, has limited

the extent to which the Due Process Clause requires judicial recusal to those cases in which there is a showing of an actual incentive for the judge to find one way or the other.

**7.** Petitioner cites to *U.S. v. Ziegenhagen,* 890 F.2d 937, 939-40 (7th Cir.1989), to argue that the Seventh Circuit would not follow the *Corbett* and *Jenkins* decisions of the Sixth Circuit. *Ziegenhagen* is inapposite, however, because it involves a conflict of interest between a defendant and his attorney and consequently arises under the Sixth Amendment guarantee of effective representation by counsel. Furthermore, cases cited by petitioner that are based on the federal judicial disqualification statute, 28 U.S.C. § 455, are irrelevant to the constitutional claim presented here. *See, e.g., Russell v. Lane,* 890 F.2d 947 (7th Cir.1989); *United States v. Gipson,* 835 F.2d 1323 (10th Cir.1988).

death penalty." *People v. Del Vecchio,* 129 Ill.2d 265, 135 Ill.Dec. 816, 821, 544 N.E.2d 312, 317 (1989). (*See also Garippo Dep.* pp. 20–23.) Absent such a showing, Judge Garippo's statements do not indicate hostility towards Del Vecchio and thus do not rise to a matter of constitutional concern.

■ Del Vecchio also contends that Judge Garippo's rulings—such as allowing Del Vecchio's allegedly involuntary 1965 confessions to be presented at the sentencing hearing and rejecting Del Vecchio's contention that his 1965 murder conviction did not make Del Vecchio death-eligible in 1979—demonstrated Judge Garippo's prejudice against Del Vecchio. Such rulings either were not raised on appeal by Del Vecchio in state court or were upheld on direct appeal to the Illinois Supreme Court. Both these situations create a presumption of the legal propriety of Judge Garippo's rulings. Del Vecchio cannot overcome this presumption without a greater factual basis than Judge Garippo's adverse rulings.

Intimations that Judge Garippo's impartiality was compromised by any regret he had over his 1965 decision to expedite the filing of the indictment of Del Vecchio for the murder of Fred Christiansen (so Del Vecchio could be sentenced as a juvenile) is nothing more than pure conjecture by Del Vecchio. The potential "biasing influence" is "too remote" to violate the constitutional constraints of the Due Process Clause. *Aetna,* 106 S.Ct. at 1588 (quoting *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 100 S.Ct. 1610, 1614, 64 L.Ed.2d 182 (1980)).

■ Del Vecchio claims that Garippo's involvement in the 1965 case went beyond his decision to expedite Del Vecchio's indictment and to assign the case to an assistant State's Attorney who was his former trial partner. Garippo, according to Del Vecchio, discussed the case with assistant State's Attorneys, read a memorandum concerning the 1965 investigation and confessions, and attended Del Vecchio's 1965 plea of guilty and sentencing. (*See* Supp. Mem. in Opposition, pp. 1–2.) Garippo routinely performed many of these functions in his supervisory role as chief of the crimi-

nal division of the Cook County State's Attorney's Office. (*See* Garippo Dep., pp. 4, 5, 9.) Even assuming the truth of these allegations, Garippo's involvement with the 1965 case was far more tenuous than the day-to-day prosecutorial involvement by the prosecutors who had become judges in *Corbett* and *Jenkins.* The court refuses to expand the concept of judicial disqualification based on a conflict of interest to include this level of prior prosecutorial involvement with a defendant by a trial judge.

In summary, the limited involvement that Garippo had with Del Vecchio's 1965 prosecution did not amount to an actual conflict of interest. The evidence presented by Del Vecchio does not constitute "serious facts supporting a finding of prejudice" sufficient to allow the court to conclude that Del Vecchio was *"in fact* treated unfairly." *See Margoles,* 660 F.2d at 296. In any event, although not condoning Judge Garippo's decision not to recuse himself or at least disclose his past prosecutorial involvement with Del Vecchio, the court does not believe that the speculative nature of the alleged conflict created even an appearance of bias on the part of Judge Garippo. Therefore, the allegations of Judge Garippo's conflict of interest did not deny Del Vecchio a fair trial as required by the Due Process Clause.

## II. GROUND II: FAILURE TO CONDUCT HEARING AS TO VOLUNTARINESS OF DEL VECCHIO'S 1965 CONFESSIONS

■ Del Vecchio contends that Judge Garippo erred in admitting into evidence at the 1979 sentencing hearing Del Vecchio's confessions regarding the 1965 murder of Fred Christiansen without first conducting a hearing on Del Vecchio's motion to suppress the confessions on voluntariness grounds. Del Vecchio pleaded guilty to the Christiansen murder in 1965 and does not now claim that his plea was involuntary. It is his confessions regarding the details of the Christiansen murder which Del Vecchio contends were involuntarily procured. The Illinois Supreme Court summarily re-

jected this contention holding that Del Vecchio's voluntary plea of guilty waived "all errors or irregularities that are not jurisdictional." *Del Vecchio I,* 86 Ill.Dec. at 470, 475 N.E.2d at 849.

The State asserts that Judge Garippo's decision to admit the 1965 confessions at the 1979 sentencing hearing without having first conducted a hearing into the voluntariness of the confessions was based on a reasonable state procedural rule. "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review ... of a federal constitutional claim." *Ford v. Georgia,* — U.S. —, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991) (quoting *James v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984)). The line of Illinois cases cited by the State establishes that a defendant cannot challenge his plea of guilty based on a prior constitutional violation relating to the crime to which he pleaded guilty. *See People v. Brown,* 41 Ill.2d 503, 244 N.E.2d 159, 160 (1969); *People v. Jackson,* 47 Ill.2d 344, 265 N.E.2d 622, 625 (1970); *People v. Scott,* 49 Ill.2d 231, 274 N.E.2d 39, 40 (1971); *People v. Stanley,* 50 Ill.2d 320, 278 N.E.2d 792, 794 (1972); *People v. Phelps,* 51 Ill.2d 35, 280 N.E.2d 203, 204 (1972); *People v. Goodwin,* 5 Ill.App.3d 1091, 284 N.E.2d 430, 431 (1st Dist.1972); *People v. Patterson,* 3 Ill.App.3d 824, 279 N.E.2d 169, 170 (5th Dist.1972); *People v. Owens,* 131 Ill.App.3d 381, 475 N.E.2d 649, 650 (4th Dist.1985); *People v. Stice,* 160 Ill.App.3d 132, 112 Ill.Dec. 49, 513 N.E.2d 463, 467 (5th Dist.1987). *See also United States ex rel. Healey v. Cannon,* 553 F.2d 1052, 1057–58 (7th Cir.1977).

The holdings of these cases would be relevant if Del Vecchio were challenging his 1965 conviction. None of the Illinois cases cited by the State, however, demonstrate the existence of a state procedural rule that a defendant's plea of guilty waives, for purposes of a subsequent death penalty hearing in a case unrelated to the guilty-plea conviction, the right to attack the voluntariness of a confession made by the defendant concerning the crime to which he had pleaded guilty. Consequent-

ly, the State has not demonstrated the existence of the state procedural bar it urges here. In fact, "[t]he Illinois Supreme Court's failure to give any justification for such a radical extension of the rule [established by the Illinois cases cited above] raises serious questions as to the legitimacy of the State interest implicated." *Del Vecchio v. Illinois,* 106 S.Ct. at 207 (order denying certiorari) (Marshall, J., dissenting).

■ The State next argues that the 1965 guilty plea bars Del Vecchio from attacking in this habeas corpus proceeding the constitutional propriety of the 1965 confessions for purposes of determining their admissibility at Del Vecchio's 1979 sentencing hearing. The cases cited by the State, however, are not on point. *See Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The United States Supreme Court in both *Tollett* and *McMann* held that a habeas petitioner cannot challenge the validity of his guilty-plea conviction based upon an alleged constitutional violation relating to *that* case. The Supreme Court has explained that a case such as *Tollett* "does not rest on any notion of waiver, but rests on the simple fact that the claim is irrelevant to the constitutional validity of the conviction." *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 2377, 76 L.Ed.2d 595 (1983). Once again, these cases would have been relevant if Del Vecchio were challenging his 1965 conviction. Rather, Del Vecchio is challenging the constitutional propriety of using his 1965 confessions in the sentencing phase of his 1979 criminal trial without a requested judicial evaluation as to the voluntariness of those confessions. In other words, the issue is whether Del Vecchio's 1965 confessions were obtained in conformance with constitutional standards so as to be available for presentation by the State at the 1979 death penalty hearing. That issue is separate and apart from presenting at the 1979 sentencing hearing the fact of Del Vecchio's

1416

1965 guilty-plea conviction.[8] Since Del Vecchio's 1965 conviction is not at issue here, *Tollett* and *McMann* are not applicable to Del Vecchio's claim.

In *Haring*, the Supreme Court held that a plea of guilty does not bar a subsequent action under 42 U.S.C. § 1983 challenging the legality of a search which produced inculpatory evidence. The Court believed it would be "impermissible for a court to assume that a plea of guilty is based on a defendant's determination that he would be unable to prevail on a motion to suppress evidence." 103 S.Ct. at 2375–76. Moreover, "[t]he defendant's rights under the Fourth Amendment are not among the trial rights that he necessarily waives when he knowingly and voluntarily pleads guilty." *Id.* at 2377. Thus, the Supreme Court rejected the idea that "a guilty plea is a 'waiver' of antecedent Fourth Amendment claims that may be given effect outside the confines of the criminal proceeding." *Id.* at 2377.

▆▆▆ The language in the *Haring* opinion is as applicable to a subsequent and unrelated criminal case, such as presented here, as it is to the subsequent and related civil action presented by the facts in *Haring.* Del Vecchio's plea of guilty in 1965 was more likely motivated by a desire to be sentenced as a youth before his seventeenth birthday than a determination that Del Vecchio would not prevail on a motion to suppress the confessions. Additionally, the ability to challenge the constitutional propriety of confessions sought to be introduced by prosecutors in a death penalty hearing of an unrelated criminal case taking place fourteen years after the confessions occurred is, like in *Haring*, "not among the trial rights that he necessarily waives when he knowingly and voluntarily

pleads guilty." *Id.* Consequently, any waiver resulting from Del Vecchio's 1965 guilty plea should not extend "outside the confines" of the 1965 criminal proceeding.

▆▆▆ The State also argues that the exclusionary rule should not apply to sentencing hearings to bar Del Vecchio's allegedly involuntary confessions. The State claims that the deterrent effect of not allowing the admission of the confessions would be minimal. The authority cited by the State all involve the admission of evidence obtained through searches in violation of the Fourth Amendment. The reliability of evidence seized in violation of the Fourth Amendment is not as problematic as the reliability of confessions coerced in violation of the Fifth Amendment. *See United States v. Tejada*, 956 F.2d 1256, 1260 (2d Cir.1992). In *Tejada*, the Second Circuit applied the cost-benefit analysis of the exclusionary rule, used by the Supreme Court in *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), to determine whether evidence obtained in violation of the Fourth Amendment should be excluded at sentencing. Under that approach the Second Circuit balanced the likelihood of increased deterrence against the considerable cost of excluding reliable information. *Tejada*, 956 F.2d at 1261. The Second Circuit concluded that

> [p]hysical evidence seized in violation of the Fourth Amendment—*unlike an involuntary confession taken in violation of the Fifth Amendment*—is inherently reliable.

*Id.* (emphasis added). *See Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 1785, 12 L.Ed.2d 908 (1964) (recognizing "the probable unreliability of confessions that are deemed coercive"); *Stein v. New York*, 346 U.S. 156, 73 S.Ct. 1077, 1097, 97 L.Ed.

---

**8.** The State argues that "petitioner's 1965 confessions were admitted at his 1979 sentencing hearing ... as aggravating evidence to show that petitioner was factually guilty of the murder of Fred Christiansen." (State's Reply, p. 5.) The 1965 conviction based on petitioner's guilty plea was communicated to the jury separate and apart from the confessions. "[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt

from the case." *Haring,* 103 S.Ct. at 2377 (quoting *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975)). Thus, Del Vecchio's factual guilt for the 1965 murder was not in issue at the 1979 death penalty hearing at which Del Vecchio's confessions were introduced. It is clear that the confessions were not admitted to show factual guilt, but rather to impress the jury with petitioner's depiction of his crimes in his own words.

1522 (1953) ("A beaten confession is a false foundation for any conviction, while evidence obtained by illegal search and seizure, wire-tapping, or larceny may be and often is of the utmost verity").

Under the cost-benefit approach, both the need and likelihood of deterrence, *see Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 279–80, 4 L.Ed.2d 242 (1960), and the inherent lack of reliability requires the exclusion of involuntary confessions during trial and therefore certainly during a death penalty hearing in a capital case. "Because of the qualitative difference [between death and any term of imprisonment], there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).

The unreliability issue is not alleviated by the fact that Del Vecchio pleaded guilty to the 1965 crimes. The plea does not establish the truth of the confessions as a whole. Even if the plea constituted an admission of the basic facts comprising the elements of the offense charged, that admission did not necessarily extend to the truth of other aspects of the confessions. And it is the reliability of those other aspects that is at issue here because it was for them that the prosecutor is likely to have sought admission of the confessions in the first place. Had he wished only to establish petitioner's guilt of the 1965 crimes, he could have merely introduced the 1965 convictions without more.

*Del Vecchio v. Illinois*, 106 S.Ct. at 206 (order denying certiorari) (Marshall, J., dissenting).

■ Finally, the State contends that even if the trial judge failed to allow Del Vecchio a hearing on his motion to suppress, the error was harmless. The State delineates other evidence that was presented to the jury regarding prior crimes and acts of violence by Del Vecchio, including domestic violence, his guilty plea to the 1965 crimes, and evidence presented at the Canzoneri murder trial. Nevertheless, a coerced confession, unlike the other evidence presented to the sentencing jury, "combines the persuasiveness of apparent conclusiveness with what judicial experience shows to be illusory and deceptive evidence." *Stein*, 73 S.Ct. at 1097. This court cannot declare that the decision to deny Del Vecchio an opportunity to challenge the constitutionality of the 1965 confessions before they were admitted at the 1979 death penalty hearing was harmless.

■ An evidentiary hearing in the state court as to whether Del Vecchio's 1965 confessions were obtained voluntarily is constitutionally required. Del Vecchio is entitled to "a determination of the voluntariness of his confession in the state courts in accordance with valid state procedures." *Jackson*, 84 S.Ct. at 1789. *See Sigler v. Parker*, 396 U.S. 482, 90 S.Ct. 667, 669, 24 L.Ed.2d 672 (1970) ("the appropriate remedy when a court finds a *Jackson v. Denno* error in a prior state proceeding is to allow the State a reasonable time to make an error-free determination on the voluntariness of the confession at issue").

### III. GROUND III: POLICE OFFICER MOTZNY'S ALLEGED PERJURY

Del Vecchio next contends that his due process rights were violated at the 1979 sentencing hearing when Sergeant John Motzny of the Chicago Police Department committed perjury by testifying that Del Vecchio's mother ("Mrs. Del Vecchio") told Officer Motzny, within hours after Del Vecchio's February 2, 1965 arrest, that she had no knowledge of Del Vecchio's use of drugs. According to Del Vecchio, Officer Motzny's testimony regarding Mrs. Del Vecchio's statement to him was significant because it supported the prosecution's theory that Del Vecchio feigned being under the influence of drugs at the time of the 1977 killing as well as at other times.

■ The knowing use of perjured testimony constitutes a denial of due process because such "a deliberate deception of court and jury" is "inconsistent with the rudimentary demands of justice." *United States v. Kaufmann*, 783 F.2d 708, 709 (7th Cir.1986) (quoting *Mooney v. Holo-*

*han,* 294 U.S. 103, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935)). For Del Vecchio to prevail on a perjured testimony claim, he must establish that perjured testimony was knowingly and intelligently introduced at trial by the prosecuting authorities. *United States ex rel. Burnett v. Illinois,* 619 F.2d 668, 674 (7th Cir.1980), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980). Contradictory testimony, however, does not constitute perjury. *Id.* Habeas relief is not warranted where all that has been shown is that a "witness was mistaken and his testimony incorrect." *United States ex rel. Williams v. Walker,* 535 F.2d 383, 388 (7th Cir.1976). Instead, perjury requires some "palpable testimonial contradiction or untruth." *Anderson v. United States,* 403 F.2d 451, 454 (7th Cir. 1968), *cert. denied,* 394 U.S. 903, 89 S.Ct. 1009, 22 L.Ed.2d 215 (1969).

■ To succeed in demonstrating a "palpable testimonial contradiction or untruth," Del Vecchio must present evidence which shows that Mrs. Del Vecchio did not tell Officer Motzny after Del Vecchio's arrest on February 2, 1965, that she knew nothing about her son's drug use. The evidence presented falls short of this mark.

Del Vecchio submits several documents to demonstrate Officer Motzny's alleged perjury. The first document is a missing persons report made when Mrs. Del Vecchio contacted police on February 1, 1965. The report's reference to Del Vecchio's drug use consists of a checked box indicating that Del Vecchio was "using narcotics." The report purports to reflect what Mrs. Del Vecchio told police officers other than Officer Motzny on February 1, 1965, when she reported her son missing before his arrest. In such a situation, Mrs. Del Vecchio most likely volunteered information about her son in order to assist in locating him. These circumstances are significantly different from an interrogation initiated by the police after Del Vecchio's arrest. The report reveals nothing about what Mrs. Del Vecchio may or may not have told Officer Motzny after her son's arrest on February 2, 1965.

A second document, an investigation summary report prepared by an unidentified author, states that Mrs. Del Vecchio described her son at the time she reported him missing as "a user of 'pep pills.'" The summary report subsequently states that Officers Motzny and Vass spoke to Mrs. Del Vecchio prior to his arrest where she "reiterated the information regarding her son." It is unclear what information Mrs. Del Vecchio reiterated. In any event, this is not the post-arrest conversation referred to by Officer Motzny in his testimony. Del Vecchio points out that the absence of a reference in the report to a post-arrest conversation reveals that such conversation never occurred. Such evidence by omission does not constitute the palpable testimonial contradiction required to demonstrate perjury, especially in light of the unknown authorship of the summary report.

Del Vecchio offers newspaper articles published on February 4 and 5, 1965, which "reflect that [Mrs.] Del Vecchio told reporters that she had known about [Del Vecchio's] use of drugs for about three weeks before his arrest." These articles provide no insight into whether Mrs. Del Vecchio told Officer Motzny on February 2, 1965, that she had no knowledge of Del Vecchio's drug use. Thus, the articles are not probative of the veracity of Officer Motzny's testimony.

Del Vecchio asserts that "Motzny's intent to deceive" concerning his post-arrest conversation with Mrs. Del Vecchio is apparent in other evidence which discloses Del Vecchio's drug use. Once again, this evidence is not probative of the existence or the content of the post-arrest conversation at issue.

A "clear-up" report dated February 3, 1965, co-authored by Officer Motzny, and an affidavit made by Mrs. Del Vecchio in 1986 are the only evidence submitted by plaintiff which could potentially create a plain contradiction of the challenged testimony. The clear-up report refers to a conversation Officers Motzny and Vass had with Mrs. Del Vecchio before Del Vecchio's arrest. There is no mention of a discussion of Del Vecchio's drug use during that con-

versation. Moreover, the report does not mention a post-arrest conversation between Officer Motzny and Mrs. Del Vecchio, thereby indicating, according to Del Vecchio, that Mrs. Del Vecchio "did not talk to Motzny after [petitioner's] arrest." (Mem. in Opposition, p. 48.) While the absence of a notation about a post-arrest conversation between Officer Motzny and Mrs. Del Vecchio may cast some doubt on whether it in fact occurred, the court reiterates that such evidence by omission does not constitute the palpable contradiction required to demonstrate perjury.

In her 1986 affidavit, Mrs. Del Vecchio did not recall speaking to Officer Motzny after Del Vecchio's arrest. Mrs. Del Vecchio, however, also did not recall telling Officer Motzny about her son's drug use. Thus, the affidavit does not contradict the testimony of Officer Motzny.

The challenged testimony of Officer Motzny has not been shown to be perjurious. Only with great difficulty can the documents be considered even contradictory of Officer Motzny's testimony. None of the proffered documentary evidence addresses any post-arrest conversations. The mere absence of a narrative recounting a post-arrest conversation does not indicate that Officer Motzny's testimony was even mistaken. At best, the material submitted by Del Vecchio "merely discredits" Motzny's testimony. *See United States ex rel. Kowal v. Attorney General,* 550 F.Supp. 447, 451 (N.D.Ill.1982). Therefore, the court fails to see how Del Vecchio's evidence manifests the "palpable contradiction" required for habeas relief from the use of perjured testimony.

## IV. GROUNDS IV–V: PROSECUTOR'S ARGUMENTS CONCERNING PAROLE

■ Del Vecchio's next arguments are that his Eighth and Fourteenth Amendment rights were violated during both opening and closing arguments to the jury in the sentencing hearing when the prosecutor referred to the possibility of Del Vec-

chio's parole in the event the jury chose not to impose the death sentence. Del Vecchio first contends that the parole information given by the prosecution was an incorrect statement of the law (Ground IV). Del Vecchio also argues that the Illinois Supreme Court departed from an "otherwise unbroken line of Illinois decisions" when the court held that the comments on parole did not deny Del Vecchio a fair trial (Ground V). *See People v. Walker,* 91 Ill.2d 502, 64 Ill.Dec. 531, 440 N.E.2d 83 (1982); *People v. Szabo,* 94 Ill.2d 327, 68 Ill.Dec. 935, 447 N.E.2d 193 (1983); *People v. Brisbon,* 106 Ill.2d 342, 88 Ill.Dec. 87, 478 N.E.2d 402 (1985); *People v. Gacho,* 122 Ill.2d 221, 119 Ill.Dec. 287, 522 N.E.2d 1146 (1988).

■ Both of these issues—i.e., the propriety of the prosecutor introducing the possibility of parole and the accuracy of the parole laws—were addressed by the Illinois Supreme Court. Insofar as the issues were decided under Illinois law, this court will not question the Illinois Supreme Court's determinations. A habeas petitioner cannot challenge a state court's construction of state law. *Estelle v. McGuire,* — U.S. ——, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991). As the Seventh Circuit has recently held,

> If the state law, as construed by the state's tribunal, provided an unconstitutional result, then the writ should be granted, but not on the ground the state doesn't know its own law.

*Williams v. Chrans,* 945 F.2d 926, 956 (7th Cir.1991) (quoting *United States ex rel. Bracey v. Fairman,* 712 F.2d 315, 317 (7th Cir.1983)). *See Estelle,* 112 S.Ct. at 480 ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions").

When considering the effect of the parole remarks on the jury, the Illinois Supreme Court in *Del Vecchio I* distinguished the case from its decision in *Walker* "in that there is no evidence that the possibility of parole was a factor considered in the jury's deliberations." [9] *See also Del Vec-*

9. In *Walker,* the Court vacated the death sentence of the defendant after considering the

**1420**

*chio II*, 135 Ill.Dec. at 825, 544 N.E.2d at 321 (*Del Vecchio I* distinguished *Walker* "where the jury clearly was persuaded by the remarks about parole"). The Court distinguished Del Vecchio's situation from *Brisbon* (and presumably other Illinois cases) by stating that "[d]ifferent results were reached under different facts." *Del Vecchio II*, 135 Ill.Dec. at 826, 544 N.E.2d at 322. When considering whether the parole arguments made by the prosecutor were a correct statement of the law, the Illinois Supreme Court, in both *Del Vecchio I*, 86 Ill.Dec. at 472, 475 N.E.2d at 851, and *Del Vecchio II*, 135 Ill.Dec. at 825, 544 N.E.2d at 322, stated that the assistant State' Attorney "accurately" described the jury's sentencing choices when he set forth the parole possibilities. With respect to both these state law issues, it is not for this court to question the Illinois Supreme Court's construction of its own law.

▇ The propriety of the Illinois Supreme Court's analysis of the parole statements under the United States Constitution is subject to review by this court. The Illinois Supreme Court's attempt to factually distinguish Del Vecchio's case from other Illinois cases is sufficient to reject the contention that Illinois courts have denied similarly situated defendants equal protection of law. *See McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 1766 n. 8, 95 L.Ed.2d 262 (1987).

Under the United States Constitution, the case of *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) is controlling. The respondent in *Ramos* challenged the constitutionality of presenting California's "Briggs Instruction" to a capital sentencing jury. The instruction informed the jury that a sentence of life imprisonment without the possibility of parole may be commuted by the Governor to a sentence that includes the possibility of parole. *Id.* 103 S.Ct. at 3450. The United States Supreme Court rejected the conten-

tion that "the possible commutation of a life sentence must be held constitutionally irrelevant to the sentencing decision and that it is too speculative an element for the jury's consideration." *Id.* 103 S.Ct. at 3453–54.

> By bringing to the jury's attention the possibility that the defendant may be returned to society, the Briggs Instruction invites the jury to assess whether the defendant is someone whose probable future behavior makes it undesirable that he be permitted to return to society.... [T]he Briggs Instruction focuses the jury on the defendant's probable future dangerousness.

*Id.* 103 S.Ct. at 3454. The Supreme Court in *Ramos* approved the jury's consideration of the defendant's propensity for harm. *Id.* 103 S.Ct. at 3454–55, 3457. Moreover, the Court, relying on the accuracy of the information given the jury, found no diminution in the reliability of the sentencing decision. *Id.* 103 S.Ct. at 3455. "Surely the [petitioner] cannot argue that the [United States] Constitution prohibits the State from accurately characterizing its sentencing choices." *Id.* at n. 19. The Court also found the Briggs Instruction consistent with the kind of individualized focus required in capital sentencing decisions. *Id.* 103 S.Ct. at 3456–57.

▇ The United States Supreme Court's analysis of the Briggs Instruction in *Ramos* is equally applicable to the parole argument made by the prosecutor at Del Vecchio's sentencing hearing. Like the Briggs Instruction, the prosecutor's statements regarding parole focused the jury on the defendant's probable future dangerousness. With respect to the reliability of the sentencing decision, the court, as discussed above, will not find that the state court misread or misapplied its own law regarding the accuracy of the parole comments. This case presents no more reason than in *Ramos* to find that the challenged remarks

---

effect on the jury of the prosecutor's comments. *Walker,* 64 Ill.Dec. at 538, 440 N.E.2d at 90. The Court partially relied upon a note that the jury sent to the judge during deliberations. *Id.* The note assisted the Court in finding that the prosecutor's statements "present[ed] the very

real possibility that the jury was led to believe that whether or not the defendant would ultimately be paroled was a proper matter for them to consider in determining whether the death penalty should be imposed." *Id.*

were speculative, irrelevant, or inconsistent with individualized sentencing. Thus, the prosecutor's argument to the jury concerning the possibility of parole in the event the jury chose not to impose the death sentence does not rise to the level of constitutional concern.[10]

## V. GROUND VI: PROSECUTOR SWEENEY'S ALLEGED MISREPRESENTATIONS

■■■ Del Vecchio next argues that he is entitled to a new trial because a prosecutor deliberately made material misrepresentations of fact in a brief opposing Del Vecchio's efforts to obtain certiorari on the Garippo-conflict issue discussed above (Ground I). Del Vecchio claims that assistant State's Attorney Kevin Sweeney filed a response to Del Vecchio's certiorari petition which argued, in five different places, that Del Vecchio waived the recusal issue because his lawyer knew that Garippo had been a major supervisor in the State's Attorney's Office in 1965 and nevertheless chose not to seek recusal. Del Vecchio states that Sweeney cited to an affidavit of defense counsel which actually contradicted Sweeney's argument. Del Vecchio also asserts that Sweeney misrepresented to the United States Supreme Court that there were fewer than twelve trial judges available to try Del Vecchio's case in the Circuit Court of Cook County in 1979.

Del Vecchio seeks a new trial as a result of Sweeney's misrepresentations. Even if this court were to find that Sweeney's conduct amounted to a constitutional violation, a remedy for that violation would have to be tailored to fit the nature and extent of the constitutional violation. *Al–Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir.1991). A new trial would not be an appropriate remedy for the violation asserted here. The alleged violation had no effect on either Del Vecchio's 1979 conviction or the sentence he received, both of which occurred more than ten years before Del Vecchio sought certiorari on the Garippo-recusal issue.

■■■ The most profound effect the alleged misrepresentations could have had on Del Vecchio was to doom his efforts to have the United States Supreme Court review the Garippo-recusal issue. An appropriately-tailored remedy would be to allow Del Vecchio to re-petition the United States Supreme Court for certiorari based on a correction of the material misstatements of fact by the State. The Supreme Court could then re-evaluate its decision to deny certiorari with the correct facts before it.[11] The decision to allow a re-petition for certiorari should be made by the United States Supreme Court. This court is not the proper forum to grant such relief. For these reasons, the court will not evaluate the merits of this claim.

---

10. In *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), relied on by Del Vecchio, the prosecutor's commented to the jury that its determination regarding the death sentence is subject to appellate review. The Court held that it was "constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* 105 S.Ct. at 2639. *Caldwell* is not relevant to this case for two reasons. First, "*Caldwell* is relevant only to certain types of comment—those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2473 n. 15, 91 L.Ed.2d 144 (1986). Second, the Illinois Supreme Court found that the parole comments in the instant case were accurate under Illinois law.

11. It is likely that the Supreme Court, upon evaluating the petition for certiorari, was aware that at least a factual dispute existed concerning the knowledge of Judge Garippo's prosecutorial history by Del Vecchio's attorneys and the number of trial judges available to try the case. Del Vecchio filed a reply brief in support of its certiorari request in which he pointed out that the State had misstated the facts. Furthermore, the Illinois Supreme Court's opinion in *Del Vecchio II* stated that the record reflected that defense counsel "knew that Judge Garippo had been an assistant State's Attorney, but they were unaware that he had been chief of the criminal division at the time." *Del Vecchio II*, 135 Ill. Dec. at 820, 544 N.E.2d at 316. After certiorari was denied, a supervisor in the Cook County State's Attorney's Office informed the Clerk of the Supreme Court that the State's brief in opposition contained several material misstatements of the record. The Supreme Court took no action after receiving the information.

## VI. GROUND IX: ADMISSION OF CO-DEFENDANTS' STATEMENTS

■ Del Vecchio also contends that he was denied the right to confront witnesses when the state trial court permitted a police officer to testify at the sentencing hearing to the statements of Del Vecchio's accomplices in the 1965 robbery and murder of Fred Christiansen. Del Vecchio has withdrawn this claim subject to renewal upon determination of the admissibility of Del Vecchio's alleged involuntary confessions claim (Ground II). It is the determination of this court that Del Vecchio may renew this claim in state court in the event that the state court determines after conducting the hearing required hereby that Del Vecchio's 1965 confessions were involuntary and thus should not have been admitted at the 1979 sentencing hearing.

## VII. GROUND X: OPINIONS OF ABSENT EXPERTS

■ Del Vecchio contends that Dr. Richard Rogers, a clinical psychologist, and Dr. James Cavanaugh, a psychiatrist, both called by the State in rebuttal at the sentencing hearing, were improperly allowed to testify as to the opinions of nontestifying experts. Rogers and Cavanaugh "testified that, in their opinions, defendant was sane at the time of the offenses, was a sociopath and malingerer who at the time of the offense was not suffering from extreme mental or emotional distress." *Del Vecchio I*, 86 Ill.Dec. at 472, 475 N.E.2d at 851. The testimony of which Del Vecchio complains consists of "statements that other psychiatrists who had examined defendant reached conclusions consistent with those of Drs. Rogers and Cavanaugh." *Id.* Del Vecchio argues that permitting these witnesses to testify about the opinions of nontestifying witnesses violated Del Vecchio's Sixth Amendment right of confrontation.

■ It is appropriate to rely on hearsay at sentencing because the sentencing process requires "the fullest information possible concerning the defendant's life and characteristics." *U.S. v. Agyemang*, 876 F.2d 1264, 1271 (7th Cir.1989)

(quoting *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)). *See also United States v. Beal*, 960 F.2d 629, 634 (7th Cir.1992). A practical reason for allowing hearsay at a sentencing hearing has also been proffered: given the breadth of information properly allowable at a sentencing hearing, not allowing the court to consider hearsay could turn the sentencing hearing "into an endless parade of witnesses. . . ." *Agyemang*, 876 F.2d at 1271 (quoting *United States v. Harris*, 558 F.2d 366, 377 (7th Cir.1977) (dissenting opinion)). The relaxation of hearsay rules has been applied to capital sentencing as well as noncapital sentencing. *See, e.g., Tucker v. Kemp*, 762 F.2d 1480, 1486–87 (11th Cir.1985). *See Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (it violates due process to apply state hearsay rule so as to exclude testimony offered in mitigation at capital sentencing).

■ In order to resolve the tension between the lax evidentiary standards at a sentencing hearing, including allowing the introduction of hearsay evidence, and a defendant's right not to be sentenced based on inaccurate information, a defendant must have a reasonable opportunity to rebut contested hearsay and the contested hearsay must be reliable. *Agyemang*, 876 F.2d at 1271–72. Del Vecchio does not dispute that he had sufficient access to the contested hearsay reports referred to by Drs. Cavanaugh and Rogers. Thus, Del Vecchio had an adequate opportunity to cross-examine the expert witnesses regarding the reliability of the reports of the nontestifying psychiatrists. *See United States v. Lawson*, 653 F.2d 299, 302–03 (7th Cir. 1981) Moreover, Del Vecchio offers no reason to doubt the reliability of the testimony of Drs. Cavanaugh and Rogers concerning the opinions of three non-testifying experts. Rather, the opinions were the type of evidence "reasonably relied upon by experts in the particular field in forming opinion or inferences upon the subject." *Id.* at 302 n. 7 ("[P]sychiatrists customarily use such information to make a diagnosis"). The testimony of Drs. Cavanaugh

and Rogers did not violate Del Vecchio's right to confront witnesses.

## VIII. GROUND XII: BURDEN OF PROOF UNDER DEATH PENALTY STATUTE

Del Vecchio's final claim presented to this court attacks the constitutionality of the Illinois death penalty statute. He contends that the binary decision made by a capital jury in the sentencing stage—"death" or "no death"—imposes no mandate on the prosecution "to prove, even by a preponderance of the evidence, that death was the appropriate punishment or that aggravation outweighed mitigation." (Del Vecchio's Mem. in Opp., p. 80.) Instead, Del Vecchio argues that due process requires "at a minimum [that] the [death penalty statute] must clearly impose upon the prosecution the burden of proving by a *preponderance* that aggravation outweighs mitigation and that death is the appropriate punishment." (*Id.* at 81.)

In *Silagy v. Peters*, 905 F.2d 986 (1990), the Seventh Circuit directly addressed the burden of proof under the Illinois death penalty statute. *Id.* at 997–99. The court premised its ruling on the reasoning of the Illinois Supreme Court that under the Illinois death penalty statute,

> the prosecution bears the initial burden of persuasion in the balancing stage of the sentencing proceeding.... [to] persuad[e] the jury that, as the statute states, there are no mitigating factors sufficient to preclude the sentencer from imposing the sentence of death for which the defendant is eligible.... [W]here a defendant attempts to persuade the jury that the death penalty is inappropriate in his case, "a burden of persuasion is placed on the defendant by the sentencing statute...." ... [T]he imposition of such a burden of persuasion on a defendant "is constitutional because at this point in the hearing the prosecution has already proven beyond a reasonable doubt that a statutory aggravating factor exists making the defendant eligible for the death penalty ... and the jury is now weighing aggravating and mitigating factors presented by both the

State and defendant." ... [W]e reject Petitioner's argument that [the statute] violates the eighth or fourteenth amendments.

*Id.* at 998–99 (quoting *People v. Bean*, 137 Ill.2d 65, 147 Ill.Dec. 891, 560 N.E.2d 258 (1990)). Thus, the burden of proof allocation under the Illinois death penalty statute is not unconstitutional.

## CONCLUSION

For the reasons stated above, petitioner George Del Vecchio's petition for writ of habeas corpus is GRANTED with respect to Ground II, the trial judge's failure to conduct a hearing on the voluntariness of Del Vecchio's 1965 confessions. The State of Illinois is to request the Circuit Court of Cook County to conduct an evidentiary hearing within 120 days of the date of this order on Del Vecchio's motion to suppress the 1965 confessions on voluntariness grounds (Ground II). In the event that Del Vecchio's motion to suppress is granted, the Circuit Court of Cook County may then address the issue of the admissibility of the co-defendants' statements discussed in Ground IX of Del Vecchio's petition. With respect to all other grounds considered herein, Del Vecchio's petition is DENIED.